EXHIBIT A

| | |
|---|---|
| **WIECHERT, MUNK & GOLDSTEIN, PC**<br>David W. Wiechert, SBN 94607<br>Jessica C. Munk, SBN 238832<br>William J. Migler, SBN 318518<br>27136 Paseo Espada, Suite B1123<br>San Juan Capistrano, CA 92675<br>Telephone: (949) 361-2822<br>Email: Dwiechert@aol.com<br>       Jessica@Wmgattorneys.com<br>       William@Wmgattorneys.com<br><br>*Attorneys For Jacob Bychak* | **MINTZ, LEVIN, COHN, FERRIS, GLOVSKYAND POPEO, P.C.**<br>Randy K. Jones, SBN 141711<br>3580 Carmel Mountain Road, Suite 300<br>San Diego, Ca 92130<br>Telephone: (858) 314-1510<br>Email: Rkjones@Mintz.Com<br><br>Daniel J. Goodrich, BBO 692624 (Pro Hac)<br>Ryan Dougherty, BBO 703380 (Pro Hac)<br>1 Financial Center<br>Boston, MA 02111<br>Djgoodrich@Mintz.com<br>Rtdougherty@Mintz.com<br><br>*Attorneys For Mark Manoogian* |
| **BIENERT KATZMAN LITTRELL WILLIAMS LLP**<br>Thomas H. Bienert, Jr., SBN 135311<br>James D. Riddet, SBN 39826<br>Whitney Z. Bernstein, SBN 304917<br>Carlos A. Nevarez, SBN 324407<br>903 Calle Amanecer, Suite 350<br>San Clemente, California 92673<br>Telephone: (949) 369-3700<br>Email: Tbienert@Bklwlaw.com<br>       Jriddet@Bklwlaw.com<br>       Wbernstein@Bklwlaw.com<br>       Cnevarez@Bklwlaw.com<br><br>*Attorneys For Mohammed Abdul Qayyum* | **BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG RHOW P.C.**<br>Gary S. Lincenberg, SBN 123058<br>Nicole Rodriguez Van Dyk, SBN 261646<br>Darren L. Patrick, SBN 310727<br>Alexis A. Wiseley, SBN 330100<br>1875 Century Park East, Floor 23<br>Los Angeles, CA 90067<br>Telephone: (310) 201-2100<br>Email: Glincenberg@Birdmarella.com<br>       Nvandyk@Birdmarella.com<br>       Dpatrick@Birdmarella.com<br>       Awiseley@birdmarella.com<br><br>*Attorneys For Petr Pacas* |

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JACOB BYCHAK, et al.,<br><br>Defendants | Case No. 18-CR-4683-GPC<br>Honorable Gonzalo P. Curiel<br><br>**DEFENDANTS' REPLY TO GOVERNMENT'S CONSOLIDATED OPPOSITION**<br><br>*[Filed concurrently with Declaration of Randy K. Jones and Defendants' Joint Motion for Leave to File Reply]* |

Defendants Jacob Bychak, Mark Manoogian, Mohammed Abdul Qayyum, and Petr Pacas (jointly, Defendants") hereby reply to the consolidated opposition to the Defendants' Motions for Spamhaus's History of Government Contacts & Reconsideration regarding the Confidential Informant [Dkt. No. 283] (the "Opposition") filed by the government on September 27, 2021.

### I. INTRODUCTION

From the outset, the government's investigation has been guided by the Spamhaus Informant ("SI"). In his own words, the SI has spent "literally thousands of hours" investigating Company A and the Defendants, and "[e]verything [Spamhaus] dug up was of course sent along to FBI." *See* Under Seal Ex. 14 at ADCONION-DISC45-00005 to Opposition.[1] As a result, Defendants' Motion to Compel Discovery Regarding Spamhaus's Cooperation with Governmental Investigations contemplated a Fourth Amendment challenge based on the SI's illegal seizure of Company A's documents. Dkt. No. 281.

Since then, the SI has found new ways to remain involved in the investigation, and new ways to violate Defendants' constitutional rights that justify the relief sought

---

[1] All under seal exhibits referenced herein were filed in support of the Opposition.

1

in Defendants' motion. Like a mosquito drawn to an ultraviolet light, the SI is surveilling defense counsels' internet activity, sharing their private data and internet-based research with the government, and invading the work product privilege by providing a window into the defense's mental impressions and strategy. Thus, while the government is fighting tooth-and-nail to keep the SI's identity out of the case, it is simultaneously receiving a steady stream of information from the SI.

Intentional invasion of the defense camp seriously undermines Defendants' constitutional right to due process under the Fifth Amendment and right to counsel under the Sixth Amendment. It also underscores Defendants' need to investigate whether the SI engaged in a pattern or practice of illegal behavior in the course of cooperating with government's investigations, and the extent to which the government has known about or acquiesced to this outrageous conduct.[2] In addition to the bases set forth in the motion, such discovery is necessary for Defendants to ascertain and seek remedy for the SI's invasion of the defense camp. *See In re Grand Jury Subpoenas*, 454 F.3d 511, 517 (6th Cir. 2006) ("leaking of privileged materials to investigators would raise the spectre of *Kastigar*-like evidentiary hearings.") (Referencing *United States v. Kastigar*, 406 U.S. 441 (1972)).

## III. ARGUMENT

The SI's outrageous, unethical, and potentially illegal conduct—and the government's unwillingness to immediately halt it—is alarming. Defendants' motion detailed the SI's apparent theft of Company A documents and efforts to pass along attorney-client communications contained in them to the government. Since the filing of the government's opposition, the SI has crossed legal and ethical boundaries by surveilling and sharing with the government defense counsel's private internet-based research. It is more essential than ever that Defendants have an opportunity to

---

[2] Defendants seek the SI's and Spamhaus' contact with the government on other criminal investigations to determine if this conduct is standard operating procedure.

investigate his conduct. The SI has intentionally intruded upon defense counsel's trial preparations in violation of Defendants' constitutional rights, but also appears to have transgressed internet privacy laws. This raises further concerns about the use of illegally obtained evidence in this case.

### A. Applicable Law

The work-product doctrine applies to criminal litigation. *United States v. Nobles*, 422 U.S. 225, 236 (1975). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Id.* at 238. A defense attorney's investigation into his client's alleged conduct constitutes work product. *See United States v. Horn*, 811 F. Supp. 739, 746 (D.N.H. 1992); *see also United States v. June*, 10-30021, 2011 WL 5330788, at *2 (D. Mass Oct. 19, 2011). The government is forbidden from eavesdropping or planting agents to hear or disrupt councils of the defense. *See, e.g.*, *United States v. Henry*, 447 U.S. 264 (1980) (government violated the Sixth Amendment for using informant to obtain incriminating statements); *Black v. United States*, 385 U.S. 26 (1966) (vacating conviction and ordering new trial where FBI monitored petitioner and his attorney's conversations in an unrelated matter and later shared that information with the prosecution team); *see also In re Terkeltoub*, 256 F. Supp. 683, 685 (S.D.N.Y. 1966) ("The defendant has the right to prepare in secret … The prosecution's secret intrusion offends both the Fifth and Sixth Amendment.") (citations omitted).

### B. Evidence of the SI's Willingness to Flaunt Legal and Ethical Boundaries is Probative of His Routine Information Gathering Practices Which the Defendants Must Be Able to Explore

The government conveniently fails to inform the Court of the SI's recent activities until the last lines of its brief in the apparent hope the Court will overlook his recent conduct. But the Court should not ignore that the SI is growing bolder as this case progresses, taking steps that threaten the integrity of the case, and demonstrating a pattern and practice of flaunting the legal and ethical lines designed to protect the Defendants' constitutional rights.

First, as discussed in the Defendants' Motion to Compel Discovery Regarding Spamhaus's Cooperation with Governmental Investigations (Dkt. No. 281-1), the SI knowingly accepted and passed stolen documents from Company A to the government, raising Fourth Amendment concerns. When the Court ordered the SI to identify the stolen documents, he revealed that he had actually summarized the illegally obtained emails in order to circumvent any attorney-client privilege claims down the road. *See* Dkt. No. 281-5. Whether the government first obtained these emails from another source, intends to use these specific documents in its case-in-chief, or even whether the prosecutors personally reviewed them is ***beside the point***. The SI's willingness to use ill-gotten communications is material to the issue of whether the government's case is legally and ethically compromised. Indeed, what privileged information has been "sanitized" and passed to the government or its agents by the SI, and how that information may have been used to develop this case, is critical to evaluating whether and to what extent the government's case is tainted by the SI's intrusion into the attorney-client privilege and attorney work product. Defendants must be allowed to not only investigate this further, but also prepare their defense without derivative government intrusion. Moreover, the government's acquiescence to such investigatory practices is material to Defendants' position that the SI is a state actor, and the full relationship between the SI, Spamhaus, and the

DEFENDANTS' REPLY IN SUPPORT OF MOTIONS TO COMPEL AND FOR
RECONSIDERATION OF MOTION TO COMPEL

government is relevant not only to the Court's resolution of that motion, but also for Defendants to mount an effective defense and bring all necessary pretrial motions.

Furthermore, the SI's outrageous, unethical, and potentially illegal actions are not a singular lapse of judgment. To the contrary, documents in government productions 45 and 46—both of which were produced in the last several days—reveal that the SI has been monitoring defense counsels' internet activity and abusing his access to defense counsels' private data collected by Spamhaus. The SI has passed this information to the government, raising further concerns about Defendants' Fifth and Sixth Amendment rights. Specifically, the documents show that the SI used Spamhaus data to determine that one defense counsel's law firm uses an email filtering system that subscribes to Spamhaus data, which, according to the SI, makes the attorney a "lying lawyer." *See* Under Seal Ex. 14 at ADCONION-DISC45-00001. These emails further suggest the SI is trying to intimidate the defense team. More shocking, on September 26, 2021, the SI emailed the government to share information about searches that multiple defense lawyers conducted on the Spamhaus website, including the dates and times defense counsel searched the website, their search terms, IP addresses, and the physical locations from which defense counsel conducted the searches—in other words, the metadata pertaining to Defense counsels' pretrial research. *See* Declaration of Randy Jones at ¶ 2.

This conduct is highly unethical and inappropriate, and is an intrusion into defense counsels' work product revealing their research and preparations for trial. *See Nobles*, 422 U.S. at 238 (1975) (the work product doctrine "assur[es] the proper functioning of the criminal justice system"); *United States v. Wirth*, No. CRIM. 11-256 ADM/JJK, 2012 WL 1110540, at *4 (D. Minn. Apr. 3, 2012) (document metadata, "almost by definition, shows the [attorneys'] mental processes … by revealing the [attorneys'] … decisions and steps" and, therefore, constitutes "'opinion work product' entitled to stronger protection than other types of work

5
DEFENDANTS' REPLY IN SUPPORT OF MOTIONS TO COMPEL AND FOR RECONSIDERATION OF MOTION TO COMPEL

product"); *United States v. Segal*, No. 02-CR-112, 2004 WL 830428, at *8 (N.D. Ill. Apr. 16, 2004) ("[S]earch terms … provide a window into the attorney's thinking" and "indicate that [the attorney] was researching the claims at the heart of the present litigation"). The SI shared the defense camp's work product and other information the government could not obtain short of a subpoena. But an attorney's preparations for litigation are not discoverable and cannot be used to inculpate a defendant at trial. *See Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763 (7th Cir. 2006) (explaining that "[t]he work-product doctrine shields materials … on the theory that the opponent should not be allowed to … invite the jury to treat candid internal assessments of a party's legal vulnerabilities as admissions of guilt").[3]

If the SI is performing these searches at the government's behest, he is clearly a government agent. But even if they have not asked the SI to do this, the FBI agents and federal prosecutors have not told him to stop. This is cause for grave concern. *See United States v. Reed*, 15 F.3d 928, 931 (9th Cir. 1994). Criminal defendants possess robust constitutional rights to a fair trial, including the right to prepare for trial in secret. *In re Terkeltoub*, 256 F. Supp. 683, 685 (S.D.N.Y. 1966). Mere possession by the prosecution of otherwise confidential knowledge about the defense strategy is sufficient in itself to establish detriment to the criminal defendant. *See United States v. Danielson*, 325 F.3d 1054, 1068 (9th Cir. 2003), as amended (May 19, 2003) ("[O]nce the [prosecution] learned [informant] had obtained trial strategy information (and therefore knew that he might learn more such information in future conversations), the prosecution team was on notice of a potential Sixth Amendment violation if [informant], now acting on behalf of the government, continued to [provide information].") (emphasis added); *Briggs v. Goodwin*, 698 F.2d 486, 494-

---

[3] As if providing information on the defense counsels' preparation was not enough, the SI also provided the government access to the Spamhaus database to perform its own searches as to the Defendants' case preparation. *See* Dkt. No. 257-4.

95 (D.C. Cir.) (quoting *Weatherford v. Bursey*, 429 U.S. 545, 556 (1977), reh'g granted and opinion vacated on other grounds, 712 F.2d 1444 (D.C. Cir. 1983).

Here, the government has failed to take any "measures to safeguard the system against treachery." *See United States v. Bernal-Obeso*, 989 F.2d 331, 333-34 (9th Cir. 1993). Whether it is determined that the SI is a state actor or not, the government still has a duty not to accept, allow, or overlook third-party behavior that jeopardizes a defendant's Fifth and Sixth Amendment constitutional rights. *See United States v. Levy*, 577 F.2d 200, 209 (3d Cir. 1978) ("Free two-way communication between client and attorney is essential if the professional assistance guaranteed by the sixth amendment is to be meaningful. The purpose . . . is inextricably linked to the very integrity and accuracy of the fact finding process itself. Even guilty individuals are entitled to be advised of strategies for their defense . . . [A]ny advice received as a result of a defendant's disclosure to counsel must be insulated from the government."); *see also ABA Criminal Justice Standards for Prosecutorial Investigations*, Standard 2.5(j) "The prosecutor should guard against the cooperator obtaining information from others that invades the attorney-client or work product privileges or violates the Sixth Amendment right to counsel."[4]

The SI's egregious conduct, paired with the government's acquiescence and complacency, has materially harmed Defendants' ability to mount an effective defense. Dismissal with prejudice or disqualification of the prosecutorial team may be appropriate remedies. *See United States v. Levy*, 577 F.2d 200, 208 (3rd Cir. 1978) (holding dismissal of indictment an appropriate remedy when defendant's Sixth

---

[4] The *ABA Model Rules of Professional Conduct* rules also apply. Rule 4.4(a): … "a lawyer shall not use . . . *methods of obtaining evidence that violate the legal rights of such a person*" (emphasis added). Comment 1 thereto explains this includes "legal restrictions on methods of obtaining evidence . . . and *unwarranted intrusions into privileged relationships, such as the client- lawyer relationship*" (emphasis added); *and see* Rule 8.4(a) (It is professional misconduct for a prosecutor to violate an ethics rule through the acts of another, such as an informant).

7
DEFENDANTS' REPLY IN SUPPORT OF MOTIONS TO COMPEL AND FOR
RECONSIDERATION OF MOTION TO COMPEL

Amendment violated by codefendant, who was actually a government informant, disclosing defense strategy to the government). For now, Defendants must be permitted to learn the SI's identity and an evidentiary hearing with appropriate discovery must occur to determine the extent of the SI's conduct and its impact on Defendants' constitutional rights and trial.

Second, the SI's conduct runs amok of numerous privacy laws, obligations as an information fiduciary, and Spamhaus' own privacy policies. By collecting and sharing defense counsels' private data without their knowledge or consent, the SI has shown an outrageous disregard for privacy laws. The SI undoubtedly knows from his line of work that names and online identifiers of the attorneys for the defendants constitute "personal information" subject to stringent safeguards under both California and international law. *See*, *e.g*., Cal. Civ. Code § 1798.140 (v)(1)(A) (defining "personal information" to include "[i]dentifiers such as a real name, … unique personal identifier, online identifier, Internet Protocol address, [or] email address"); European General Data Protection Regulation ("GDPR"), Art. 4 (1) (defining "personal data" to include "any information relating to an identified or identifiable natural person," including by means of an "online identifier"). Under these strict laws, entities collecting personal information are obligated, at a minimum, to advise users of the categories of personal information they collect, and the purposes for which that information is used.[5] That did not occur here.

According to Spamhaus' data privacy policy, it collects personal information for five purposes. The only remotely applicable purpose is: "5) To gather and provide

---

[5] *See, e.g.*, Cal. Civ. Code § 1798.100 ("A business shall not collect additional categories of personal information or use personal information collected for additional purposes that are incompatible with the disclosed purpose for which the personal information was collected without providing the consumer with notice consistent with this section."); *see also* GDPR Art. 5-6 (setting forth restrictions on the "collection" and "processing" of personal data); *id*. at Art. 49 (setting forth restrictions on "transfers" of personal data).

information required by or relating to audits, enquiries or investigations by regulatory bodies or law enforcement authorities, and to assist service providers through actor attribution within the Register of Known Spam Operations database ("ROKSO")."[6] The government cannot legitimately contend that the sharing of defense counsels' personal data – including their names, online identifiers of their office computers, and the search terms they entered on the Spamhaus website – comports with any legitimate purpose; nor were defense counsel advised that their personal information would be used in this manner. This demonstrates that the SI is not only willing to break ethical rules, but is also willing to break privacy laws, and his own organizations policies on the legitimate use of the data it collects. This is a disturbing, win-at-all costs, mentality that infects the government's case and curtails Defendants' constitutional rights. The parties must determine the degree to which the case has been tainted.

As previously mentioned, the SI has guided the government's investigation from the beginning. Defendants have now presented the Court with multiple instances of the lengths the SI is willing to go to gain an unfair advantage, and the government, if not encouraging this behavior, is certainly not stopping him. If the SI has engaged in similar conduct in his past or yet to be disclosed in this matter, it is undoubtedly material under Rule 16 and exculpatory and impeaching under *Brady*

---

[6] The other four are: 1) To register a new customer; 2) To manage Spamhaus' relationship with the customer; 3) To administer and protect Spamhaus' business and website through troubleshooting, data analysis, testing, system maintenance, support, or other functions; and 4) To use data analytics to improve the website, products/services, marketing, customer relationships and experiences. https://www.spamhaus.org/organization/privacy/#4.

and *Giglio*.[7] Defendants must be permitted to use the SI's identity, conduct, and extent of his involvement with the government on this case to present their defense, and to seek remedies for any constitutional violations engendered by the information he has gathered and provided to the government.

## IV. CONCLUSION

The SI's egregious conduct and the government's acquiescence and complacency has materially harmed Defendants' ability to mount an effective defense. Defendants must be permitted to use the SI's identity and provided an evidentiary hearing with appropriate discovery to determine the extent of the SI's conduct and its impact on Defendants' constitutional rights and trial preparation.

Respectfully Submitted,

*/s/ Randy K. Jones*
Randy K. Jones

---

[7] The government fails to appreciate the low threshold required in the Ninth Circuit to demonstrate materiality under Rule 16. Information is material if it is relevant to a possible defense, *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010), and includes both inculpatory and exculpatory information, *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013) ("Information that is not exculpatory or impeaching may still be relevant to developing a possible defense."). Even information that merely "causes a defendant to completely abandon a planned defense and take an entirely different path" must be disclosed under Rule 16's broad discovery right. *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (internal quotation marks omitted). As the Ninth Circuit explained, "[t]he test is not whether the discovery is admissible at trial, but whether the discovery may assist [the defendant] in formulating a defense." *United States v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016).

| | | |
|---|---|---|
| DATED: October 1, 2021 | | **MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.** |
| | By: | _Randy K. Jones_ |
| | | Randy K. Jones |
| | | Daniel J. Goodrich (Pro Hac) |
| | | Ryan Dougherty (Pro Hac) |
| | | *Attorneys for Mark Manoogian* |
| DATED: October 1, 2021 | | **WIECHERT, MUNK & GOLDSTEIN, PC** |
| | By: | _William J. Migler_ |
| | | David W. Wiechert |
| | | Jessica C. Munk |
| | | William J. Migler |
| | | *Attorneys for Jacob Bychak* |
| DATED: October 1, 2021 | | **BIENERT KATZMAN LITTRELL WILLIAMS LLP** |
| | By: | _Whitney Z. Bernstein_ |
| | | Thomas H. Bienert, Jr. |
| | | James D. Riddet |
| | | Whitney Z. Bernstein |
| | | Carlos A. Nevarez |
| | | *Attorneys for Mohammed Abdul Qayyum* |
| DATED: October 1, 2021 | | **BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERT & RHOW, P.C.** |
| | By: | _Nicole Rodriquez Van Dyk_ |
| | | Gary S. Lincenberg |
| | | Nicole Rodriguez Van Dyk |
| | | Darren L. Patrick |
| | | *Attorneys for Petr Pacas* |

11

DEFENDANTS' REPLY IN SUPPORT OF MOTIONS TO COMPEL AND FOR
RECONSIDERATION OF MOTION TO COMPEL

# CERTIFICATE OF AUTHORIZATION TO SIGN ELECTRONIC SIGNATURE

Pursuant to section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court for the Southern District of California, I certify that the content of this document is acceptable to counsel for the Defendants and that I have obtained authorization from Jessica C. Munk, Whitney Z. Bernstein, and Nicole Rodriguez Van Dyk.

Dated: October 1, 2021        By: */s/ Randy K. Jones*
                                                     Randy K. Jones

# CERTIFICATE OF SERVICE

Counsel for Defendant certifies that the foregoing pleading has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

> AUSA Melanie K. Pierson
> AUSA Sabrina L. Feve
> AUSA Ashley E. Goff
> U.S. Attorney's Office
> 880 Front Street, Rm 6293
> San Diego, CA 92101
> melanie.pierson@usdoj.gov
> sabrina.feve@usdoj.gov
> ashley.goff@usdoj.gov

> Candina S. Heath
> Department of Justice
> 1301 New York Avenue NW, Suite 600
> Washington, DC 20530
> candina.heath2@usdoj.gov

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 1, 2021, at San Diego, California.

> */s/ Randy K. Jones*
> Randy K. Jones

117063042v.9