1              UNITED STATES DISTRICT COURT

2            SOUTHERN DISTRICT OF CALIFORNIA

3

4    UNITED STATES OF AMERICA,      )
                                    ) CASE NO.: 3:18-cr-04683-GPC-2
5              Plaintiff,           ) DATE:  FRIDAY, JUNE 10, 2022
                                    ) SAN DIEGO, CALIFORNIA
6    v.                             )
                                    ) ARRAIGNMENT AND CHANGE OF PLEA
7    MARK MANOOGIAN (2),            )
                                    ) HONORABLE GONZALO P. CURIEL
8              Defendant.           ) UNITED STATES DISTRICT JUDGE
     _____) SOUTHERN DISTRICT OF CALIFORNIA
9

10   APPEARANCES:

11   For the United States Government:

12        UNITED STATES ATTORNEY'S OFFICE
          SOUTHERN DISTRICT OF CALIFORNIA
13        880 Front Street, Room 6293
          San Diego, California  92101-8893
14        (619) 557-5610
          BY:  MELANIE K. PIERSON, ASSISTANT U.S. ATTORNEY
15             melanie.pierson@usdoj.gov
               SABRINA L. FEVE, ASSISTANT U.S. ATTORNEY
16             sabrina.feve@usdoj.gov

17                  -and-

18        UNITED STATES DEPARTMENT OF JUSTICE
          1301 New York Avenue NW, Suite 600
19        Washington, D.C.  20530
          (202) 307-1049
20        BY:  CANDINA S. HEATH, ASSISTANT U.S. ATTORNEY
               candina.heath2@usdoj.gov

21

22   _____

23        Tricia Rosate, RDR, CRR, FCRR, CSR No. 10891
               tricia_rosate@casd.uscourts.gov
24      *Proceedings recorded by machine shorthand/stenography*
      *Transcript produced by computer-aided transcription software*

25

```
 1    APPEARANCES (Continued):

 2    For the Defendant MARK MANOOGIAN:

 3        MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
          3580 Carmel Mountain Road
 4        Suite 300
          San Diego, California  92130
 5        (858) 314-1500
          BY:  RANDY K. JONES, ESQ.
 6            rkjones@mintz.com

 7

 8        MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
          One Financial Center
 9        Boston, Massachusetts  02111
          (617) 542-6000
10        BY:  RYAN T. DOUGHERTY, ESQ.
              rtdougherty@mintz.com
11            DANIEL J. GOODRICH, ESQ.
              djgoodrich@mintz.com
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          SAN DIEGO, CALIFORNIA; FRIDAY, JUNE 10, 2022

2                    9:40 a.m. - 11:24 a.m.

3                       -  -  -  -

4          (Court called to order.)

5          THE CLERK:  Calling Matter 1 on calendar,

6    18-cr-4683, the United States of America v. Jacob Bychak,

7    Mark Manoogian, and Mohammed Abdul Qayyum for arraignment and

8    change of plea; and Defendant 4, Petr Pacas, for deferred

9    prosecution hearing.

10         THE COURT:  All right.  Good morning.

11         We are here for changes of pleas with respect to

12   Defendants 1 through 3 and confirmation of the deferred

13   prosecution agreement as to Mr. Pacas and some other

14   housekeeping matters and some other related matters.

15         So let's begin with appearances.  Beginning with

16   defense counsel, may I have appearances from all defense

17   counsel.

18         MS. MUNK:  Good morning, Your Honor.

19         Jessica Munk, and my colleague, David Weinchert, on

20   the phone, on behalf of Jacob Bychak, who is present in

21   court.

22         THE COURT:  Okay.  Good morning.

23         MR. JONES:  Your Honor, good morning.

24         Randy Jones, Daniel Goodrich, and Ryan Dougherty,

25   present with our client, Mark Manoogian.

```
1              THE COURT:  All right.  Good morning.

2              MR. LITTRELL:  Good morning, Your Honor.

3              John Littrell for Mohammed Abdul Qayyum.  He is

4    present.

5              Also present with us by phone is Thomas Bienert.

6              THE COURT:  John Littrell?

7              MR. LITTRELL:  Yes, Your Honor.

8              THE COURT:  All right.  Mr. Littrell and Mr. Qayyum,

9    good morning.  Then Mr. Bienert is on the line, as well.

10             And how is Ms. Bernstein?

11             MR. LITTRELL:  I think she's feeling better.  Not

12   out of the woods yet.

13             Thank you, Your Honor.

14             THE COURT:  Let her know that we're pulling for her

15   and thinking of her.

16             And on behalf of Mr. Pacas?

17             MR. PATRICK:  Good morning, Darren Patrick,

18   Alexis Wiseley, and Gary Lincenberg is on the phone call, and

19   Petr Pacas.

20             THE COURT:  Good morning to you all.

21             MR. LINCENBERG:  Good morning, Your Honor.

22             THE COURT:  Good morning, Mr. Lincenberg.

23             And how are you feeling, sir?

24             MR. LINCENBERG:  I'm feeling good.

25             Thank you, Your Honor.
```

1        THE COURT:  And then on behalf of the

2   United States.

3        MS. PIERSON:  Melanie Pierson, Sabrina Feve, and

4   Candy Heath.

5        THE COURT:  Ms. Pierson, Ms. Heath, and Ms. Feve,

6   good morning.

7        So at this point, I guess, as far as background, the

8   Court needs to develop a record of where we are.

9        We began with jury selection on May 23rd and

10  concluded that process on the 24th.  Opening statements were

11  delivered on the 24th.

12       Since May 25th, we have been in a holding pattern

13  given the infection of -- well, the COVID infection of a

14  number of lawyers, five in all; one Defendant; one witness.

15  One attorney has even experienced a COVID rebound.  So as a

16  result, we have not been able to resume trial since May the

17  24th.

18       This was originally scheduled to be a

19  five-to-six-week trial.  It was originally scheduled to

20  conclude around June 30th or July 1st.

21       At this point, given the fact that we've lost nine

22  days of trial, we would end up in trial through at least

23  July 13th or the 19th, and then we would have deliberations.

24       That creates a number of problems for a number of

25  reasons.  There are witness availability issues to the extent

1  that the Government's witnesses are from out of town; I

2  believe all except two, all of the 30-some witnesses.  There

3  are flight unavailability issues.  There were challenges in

4  trying to book flights for the jurors -- for the witnesses.

5       Then we have juror issues.  We excused one juror

6  given his medical condition.  We have received e-mails from a

7  number of additional jurors informing us that they have

8  vacation plans in July, beginning around July 5th or 6th, and

9  they did not raise those matters because they were told that

10  we would conclude this case by the last week of June.

11       We also have received communication from an

12  additional juror, who, at his employment, has been assigned to

13  a new position.  It creates obligations that require him to be

14  at work come July.

15       So given all of these challenges --

16       And the fact remains that we don't even know if we

17  would experience additional problems with respect to witnesses

18  and attorneys.

19       At this point, fortunately we have no juror who has

20  contracted COVID, but that's not even a guarantee, because

21  while it's clear that the Court was prepared to have the

22  jurors don -- wear masks once we resumed, the fact of the

23  matter is that, from what is apparent here, most of the

24  attorneys who contracted COVID contracted it not necessarily

25  here but they were at social events at home over the weekend.

1    They were --

2              I believe Ms. Bernstein may have referenced her

3    nanny who developed it.

4              So the fact of the matter is that it's a big world,

5    and people are going out into the big world, and the variant

6    is out there.  It's very contagious.  So ultimately certainly,

7    we were all concerned about being able to make it through a

8    six-week trial without any of us contracting COVID, and the

9    worst-case scenario arrived.  We have tried to deal with it as

10   responsibly as we can, but ultimately, at this time, given

11   where we are, it appears to the Court that we cannot proceed

12   with trial.

13             Fortunately, three of the Defendants have agreed to

14   enter changes of pleas today.  We will go through that in a

15   moment.  And one Defendant is going to have a deferred

16   prosecution agreement.

17             And so, at this point, my decision is to sua sponte

18   declare a mistrial, and I want to ensure that there's no

19   objection to that from any party, including Mr. Pacas.

20             So with respect to Mr. Pacas's counsel, who will

21   speak as to whether or not there's any objection to the Court

22   sua sponte ordering mistrial?

23             MR. PATRICK:  No objection, Your Honor.

24             THE COURT:  And as to Mr. Bychak?

25             MS. MUNK:  We have no objection, Your Honor.

1          THE COURT:  Mr. Manoogian?

2          MR. JONES:  No objection, Your Honor.

3          THE COURT:  Mr. Qayyum?

4          MR. LITTRELL:  No objection, Your Honor.

5          THE COURT:  Does the Government oppose a mistrial?

6          MS. PIERSON:  I just want to say for the record that

7  we had anticipated that this motion would occur after all the

8  pleas, and we had agreed with Mr. Pacas to make a joint motion

9  thereafter for a mistrial in his case.

10          THE COURT:  All right.  And we can do that, as well,

11 but at this point, at least we have a record that's fully

12 developed.

13          So, to the extent that, at this time, I have

14 announced my intention -- my tentative as to declaring a

15 mistrial and finding that there's at this time no objection,

16 we will proceed then.

17          I will proceed first with Mr. Pacas and just ensure

18 that he does agree to, among other things, waive his

19 double-jeopardy rights that he might otherwise have in this

20 matter.

21          And so, as to Mr. Pacas, is there anything that the

22 Government wants to recite into the record at this point with

23 respect to this agreement with Mr. Pacas?

24          MS. PIERSON:  We would ask that Mr. Pacas

25 acknowledge on the record that he is knowingly and voluntarily

9

1   waiving his right to double jeopardy and waiving his right to

2   a speedy trial so that he can take advantage of the provisions

3   of this agreement.

4            THE COURT:  All right.  So Mr. Pacas?

5            DEFENDANT PACAS:  Yes, Your Honor, I agree.

6            THE COURT:  All right.  So I have a deferred

7   prosecution agreement before me.  It is dated June 8, 2022,

8   and it is found in the record at ECF No. 468.  It is a

9   six-page document, and at the right-hand corner of pages 2

10  through 6, there are initials.

11           Sir, do you have the agreement in front of you?

12           DEFENDANT PACAS:  Yes.

13           THE COURT:  And are those your initials, sir?

14           DEFENDANT PACAS:  Yes, Your Honor.

15           THE COURT:  And at page 6, there is a signature line

16  for Petr Pacas, and above that, there's a signature.

17           Is that your signature, sir?

18           DEFENDANT PACAS:  Yes, Your Honor.

19           THE COURT:  Before you initialed pages 2 through 6

20  and signed it at page 6, did you review all of the contents of

21  the agreement?

22           DEFENDANT PACAS:  Yes, I did, Your Honor.

23           THE COURT:  Did you fully discuss the agreement with

24  your attorney, Mr. Lincenberg?

25           DEFENDANT PACAS:  Yes, Your Honor.

```
1           THE COURT:  Do you have any questions at all about
2      what the agreement contains and provides?
3           DEFENDANT PACAS:  It's clear to me, Your Honor.
4           THE COURT:  And one of the things that it provides
5      for is a waiver of speedy trial rights.
6           Did you discuss that with Mr. Lincenberg?
7           DEFENDANT PACAS:  Yes, Your Honor.
8           THE COURT:  You understand that you have a right to
9      a speedy trial under the Constitution and the laws of the
10     United States, and under this agreement, you're stipulating
11     that the time between the filing of the agreement and any
12     reinstitution of prosecution will be excluded from any
13     computations under the Speedy Trial Act.
14          Is that your understanding, sir?
15          DEFENDANT PACAS:  Yes, Your Honor.
16          THE COURT:  And you're prepared to make that waiver?
17          DEFENDANT PACAS:  Yes, Your Honor.
18          THE COURT:  Further, at page 4, there's a waiver of
19     double-jeopardy rights.  Within that waiver, you understand
20     that you have the right to not be tried twice for the same
21     offense, and you understand that your rights to double
22     jeopardy attaches once the jury was sworn.
23          Are you aware of that, sir?
24          DEFENDANT PACAS:  Yes, I'm aware of this.
25          THE COURT:  And you also acknowledge that the
```

1  suspension of your trial was beyond the control of the defense

2  or the United States.

3            Is that true?

4            DEFENDANT PACAS:  Yes, Your Honor.

5            THE COURT:  So you understand that, if you were to

6  violate the terms of this deferred prosecution agreement, the

7  Government would be allowed to proceed to a second trial on

8  the charges in the indictment.

9            Do you understand that?

10           DEFENDANT PACAS:  Yes, Your Honor.

11           THE COURT:  And in that way, you understand that you

12  are waiving your rights to -- your double-jeopardy rights; is

13  that correct?

14           DEFENDANT PACAS:  Yes, Your Honor.

15           THE COURT:  All right.  And then does defense

16  counsel concur and join in that waiver?

17           MR. PATRICK:  We do, Your Honor.

18           MR. LINCENBERG:  Your Honor, this is

19  Gary Lincenberg.

20           THE COURT:  Yes, sir.

21           MR. LINCENBERG:  Before you move on to another

22  Defendant, Ms. Pierson mentioned -- and I know the Court had

23  previously mentioned -- about a joint motion for a mistrial.

24           I don't see any reason why we can't do that orally

25  on the record.  The Court has just gone through it with our

1   client.  Is there really a need for a follow-up written motion

2   on this?

3           THE COURT:  Oh.  Did you say a written motion?

4           MS. PIERSON:  No.  I anticipated an oral motion at

5   this very proceeding, not a written motion.

6           THE COURT:  Yes.  That was my understanding,

7   Mr. Lincenberg, that it would be --

8           MR. LINCENBERG:  Very well.  And --

9           THE COURT:  Yes.  Go ahead, Mr. Lincenberg.

10          MR. LINCENBERG:  For the record, we jointly move

11  with Ms. Pierson for a mistrial.

12          THE COURT:  All right.  Thank you.

13          Anything further from the Government?

14          MS. PIERSON:  Nothing further.

15          Thank you.

16          THE COURT:  Thank you.

17          So, then, moving on with the changes of pleas, I

18  intend to do it one at a time rather than a group change of

19  plea because there are different factual bases, and rather

20  than have a confusing record, we will just do it one at a

21  time.

22          We will begin with Mr. Bychak.

23          We have had a number of superseding informations

24  that have been presented.  I think at last count there was

25  something like five.  But, as I understand it, we now have the

1  superseding information that we will be proceeding on, and

2  that was filed today, on June 10th.

3          And let me inquire.  With respect to the prior --

4          MS. MUNK:  Your Honor, I didn't actually receive

5  that.  The latest one I have is Docket 471 that I believe was

6  yesterday.

7          THE COURT:  As I understand it, that one has

8  Mr. Qayyum's name incorrectly set forth.  It has Abdul

9  Mohammed, and his name is actually Mohammed Abdul; is that

10  correct?

11          MS. PIERSON:  That is the correction we made when we

12  filed Document 474, which is the final and correct --

13          And I apologize for the number of corrected

14  superseding informations in this case, but we had the date

15  wrong, and I filed one that was not signed.  So I apologize

16  for that.  That's the reason for --

17          THE COURT:  So let's do this.  Let's get you a copy

18  of --

19          MR. JONES:  I need one, as well.

20          THE COURT:  So we'll get you a copy of the most

21  recently filed superseding information.

22          And I was wondering whether or not these superseding

23  informations should be given different names because there are

24  so many of them or if it's just sufficient that we have the

25  superseding information that was filed today, on June 10th,

1    specifically referenced.

2            MS. PIERSON:  I don't think that they need to be

3    separately named because the actual language of the counts is

4    exactly the same in each of the superseding informations.  It

5    was a clerical error in terms of getting his name wrong,

6    getting the date wrong, and offering one that was not signed

7    to the Court.

8            So I don't think we need to -- it's not a second

9    superseding because the only difference is a clerical error.

10           THE COURT:  All right.

11           MS. PIERSON:  There's no substantive difference.

12   They're exactly -- the language of Counts 1 and 2 are exactly

13   the same with the exception of, on Count 2, we changed "Abdul

14   Mohammed Qayyum" to "Mohammed Abdul Qayyum."

15           THE COURT:  So I'll give defense counsel a moment to

16   review this superseding information that was filed today.

17   Then I'll ask them if they agree that we can proceed on this.

18           MS. MUNK:  Your Honor, we're agreeable with the most

19   current one, Docket 474.

20           MR. JONES:  Your Honor, on behalf of Mr. Manoogian,

21   we agree to the new information.

22           MR. LITTRELL:  Also on behalf of Mr. Qayyum.

23           MR. BIENERT:  I don't know if Mr. Littrell had seen

24   the original, but I'm confirming that it does read exactly as

25   the other one did.  So I agree with Ms. Pierson.

1           (Reporter clarification.)

2           MR. LITTRELL:  That was Mr. Bienert.

3           We agree that the superseding information that was

4    filed today is adequate and the same as the one previously

5    filed with the exception of --

6           MS. PIERSON:  If it's helpful, we can move to

7    dismiss all the other superseding informations other than

8    Docket 474.

9           THE COURT:  Let's do that.  Let's do that, and then

10   we'll have a clear record.

11          So, then, that would be Document 464 -- I think that

12   was the original superseding -- then 469, 471, and I believe

13   there was another one.

14          What was the other one, Andy?

15          THE CLERK:  471, 473, and --

16          THE COURT:  473.  Okay.

17          So, then, the Government moves to dismiss 464, 469,

18   471 --

19          477?  Is that what you said, Andy?

20          THE CLERK:  473.

21          THE COURT:  473.  I'm sorry.

22          Is that correct, Ms. Pierson?

23          MS. PIERSON:  That is correct.

24          THE COURT:  The Court will grant the motion and

25   dismiss 464, 469, 471, and 473, and we will proceed on the

1    superseding information in 474.

2            So, then, what will happen is then we will withdraw

3    464, 469, 471, and 473 as the operative charging document, and

4    we will proceed with 474 as the operative charging document.

5            And then -- now we will proceed with Mr. Bychak, and

6    let's swear in Mr. Bychak for his arraignment, and let's swear

7    him in.

8            THE CLERK:  Is Jacob Bychak your true name?

9            DEFENDANT BYCHAK:  Yes, sir.

10            THE CLERK:  You are informed that a superseding

11    misdemeanor information has now been filed charging you with

12    Title 18 U.S.C. § 1037(a)(5) and (b)(3), electronic mail

13    fraud, a misdemeanor.

14            Have you received a copy of the superseding

15    information?

16            DEFENDANT BYCHAK:  I have.

17            THE CLERK:  You are further informed that you are

18    entitled to a trial by jury or trial by this Court for a

19    misdemeanor, to be represented by counsel at all stages of the

20    proceedings before this Court, and to have witnesses summoned

21    to testify on your behalf.

22            How do you plead to Count 1?  Guilty or not guilty?

23            DEFENDANT BYCHAK:  Guilty.

24            THE CLERK:  Counsel, do you waive reading of the

25    count?

1          MS. MUNK:  Yes.

2          THE CLERK:  Please raise your right hand.

3          (Defendant Bychak sworn under penalty of perjury.)

4          THE COURT:  Mr. Bychak, the oath that was

5    administered requires that you provide truthful answers to

6    questions that I pose you to.  If you were to knowingly

7    provide false information, you could be prosecuted for

8    perjury.

9          Do you understand, sir?

10          DEFENDANT BYCHAK:  I do.

11          THE COURT:  And let me inquire, sir.

12          Where were you born?

13          DEFENDANT BYCHAK:  In Santa Maria, California.

14          THE COURT:  How far did you go to school?

15          DEFENDANT BYCHAK:  Sorry?

16          THE COURT:  How far -- how many years of education

17    do you have?

18          DEFENDANT BYCHAK:  Oh.  I have an MBA.

19          THE COURT:  And how old are you, sir?

20          DEFENDANT BYCHAK:  36.

21          THE COURT:  Are you presently under the influence of

22    alcohol, medication, or drugs which would impair your ability

23    to understand what's going on today?

24          DEFENDANT BYCHAK:  No, I'm not.

25          THE COURT:  Have you been treated recently for any

1    mental illness or addiction to drugs of any kind?

2         DEFENDANT BYCHAK:  No.

3         THE COURT:  And you have received a copy of the

4    superseding information that is pending against you; is that

5    correct?

6         DEFENDANT BYCHAK:  I have, yes.

7         THE COURT:  Did you discuss those charges with your

8    attorney?

9         DEFENDANT BYCHAK:  I did, Your Honor.

10        THE COURT:  And are you fully satisfied with the

11   advice and the representation that's been provided to you by

12   your attorneys?

13        DEFENDANT BYCHAK:  I am.

14        THE COURT:  Before I can accept your change of plea,

15   I must assure myself that you understand your constitutional

16   rights that you're waiving, that you understand the means in

17   which the Court will determine your sentence, and the fact

18   that the plea agreement that you're entering -- that it is one

19   that you understand and that you're entering it knowingly and

20   voluntarily and with a full understanding of the consequences

21   that you face in this case.

22             So you have a right to plead not guilty to the

23   offense charged against you and to persist in that plea.

24             You have a right to a speedy and public trial by

25   jury, or you can waive a jury trial and have the Court try the

case without a jury.

In either case, the Government would be required to prove your guilt by proof beyond a reasonable doubt.

You have a right to have an attorney represent you throughout the case, including trial; a right to have one appointed to represent you at no charge to you if you financially quantify.

You have a right to confront and cross-examine any witnesses called to testify against you, a right to have witnesses subpoenaed to testify on your behalf, a right to present any defense that you may have to the charges, a right to remain silent throughout the trial.

Should you decide not to testify or to put on any evidence, these facts cannot be used against you.

By pleading guilty, you give up each of these rights, except you maintain your right to an attorney all the way through sentencing.

Is that clear to you, sir?

DEFENDANT BYCHAK:  It is, Your Honor.

THE COURT:  In this case, the charges that you are facing have the following maximum penalties:  a maximum one year in prison, a maximum $100,000 fine, a mandatory special assessment of $25, a term of supervised release of one year.

Do you understand that those are the maximum penalties that you face?

1    DEFENDANT BYCHAK:  I do, Your Honor.

2    THE COURT:  In this case, given the charges that are

3    pending, if it were to go to trial, the Government would be

4    required to prove and establish with proof beyond a reasonable

5    doubt the following elements:

6    Beginning on or about December 2010 and ending on or

7    about September 2014, there was an agreement between two or

8    more persons to commit the offense of electronic mail fraud in

9    violation of Title 18 United States Code § 1037(a)(5) and

10   (b)(3).

11   Second, the Defendant became a member of the

12   conspiracy knowing of its object and intending to help

13   accomplish it.

14   Third, the Defendant or a co-conspirator knowingly

15   and falsely represented himself to be the registrant, or the

16   legitimate successor in interest to the registrant, of five or

17   more Internet Protocol addresses.

18   Fourth, the Defendant or a co-conspirator

19   intentionally initiated the transmission of multiple

20   electronic mail messages from such addresses.

21   And, five, the electronic mail messages were

22   transmitted in and affecting interstate commerce.

23   Sir, do you understand that those are the elements

24   that the Government would be required to prove had this matter

25   proceeded to trial?

1        DEFENDANT BYCHAK:  I do understand, Your Honor.

2        THE COURT:  And with respect to the penalties I just

3   described to you, the maximum penalties, that there are

4   additional penalties, collateral consequences, that could be

5   incurred by a change of plea in this case.

6        For example, if you violate any of the supervised

7   release conditions, your release could be revoked; you could

8   be sent back to prison for up to the entire supervised release

9   term.

10        Do you understand that, sir?

11        DEFENDANT BYCHAK:  I do, Your Honor.

12        THE COURT:  If you are currently on probation or

13   parole, a plea of guilty could result in revocation of that

14   probation or parole in the other case, which could result in

15   time in custody in addition to that ordered in this case.

16        Do you understand that?

17        DEFENDANT BYCHAK:  I do, Your Honor.

18        THE COURT:  If you are not a United States citizen,

19   a plea of guilty could affect your residency or your status

20   with immigration authorities.

21        Do you understand that?

22        DEFENDANT BYCHAK:  I do, Your Honor.

23        THE COURT:  A plea of guilty may result in other

24   possible consequences such as affecting your right to vote,

25   right to hold public office, right to serve on a jury, right

1  to receive certain federal benefits, and the right to possess

2  any kind of firearm.

3          Do you understand that?

4          DEFENDANT BYCHAK:  Yes, I do, Your Honor.

5          THE COURT:  And let me inquire.

6          Given that this isn't a felony offense, would a

7  possible collateral consequence be the loss of possessing a

8  firearm?  Do you know?

9          MS. PIERSON:  I don't believe so.

10         THE COURT:  But in any event, you understand that

11 there's some slight possibility that your right to bear

12 firearms could be affected.

13         Do you understand that?

14         DEFENDANT BYCHAK:  Yes, I do, Your Honor.

15         THE COURT:  If applicable, the Court may order

16 restitution, forfeiture, or notice to victims in fraud cases.

17         Let me inquire.

18         Is there any restitution contemplated in this case?

19         MS. PIERSON:  We do not contemplate restitution, and

20 we believe the forfeiture was handled by the company.

21         THE COURT:  All right.  So, then, let me turn to the

22 sentencing guidelines.

23         This is a Grade A misdemeanor; correct?  And so the

24 guidelines would apply?

25         MS. PIERSON:  Yes, Your Honor.

1          THE COURT:  So your sentence will be determined by

2     identifying the applicable advisory sentencing guidelines,

3     identifying possible authorized departures, and then

4     considering statutory sentencing factors under

5     18 U.S.C. § 3553(a).

6          Since the guidelines are advisory, I'm not bound by

7     those guidelines.  I can vary from them and sentence you up to

8     the one-year maximum that I identified earlier.

9        Do you understand that?

10         DEFENDANT BYCHAK:  Yes, I do, Your Honor.

11         THE COURT:  And at this point, I won't be able to

12    determine the advisory guideline range until after a

13    presentence investigation report has been completed and you

14    and your attorney and the Government have had an opportunity

15    to challenge the reported facts and the application of the

16    guidelines determined by the Probation Office.

17         As a result, the sentence may be different than any

18    estimate that your attorney has given you.

19         Do you understand that?

20         DEFENDANT BYCHAK:  Yes, I do, Your Honor.

21         THE COURT:  Have you discussed the sentencing

22    guidelines with your attorney?

23         DEFENDANT BYCHAK:  Yes, I have.

24         THE COURT:  Do you have any questions about the

25    guidelines?

1          DEFENDANT BYCHAK:  I don't, Your Honor.

2          THE COURT:  And, finally, once you are sentenced,

3     you cannot withdraw the plea you are making here today.

4          Do you understand that?

5          DEFENDANT BYCHAK:  Yes, I do, Your Honor.

6          THE COURT:  So let me turn to the plea agreement,

7     and that is a 15-page document that is found at ECF No. 465.

8          At the bottom of each of the pages, there are the

9     initials "J. B."

10         Are those your initials, sir?

11         DEFENDANT BYCHAK:  They are, Your Honor.

12         THE COURT:  At page 15, there's a signature line for

13    "Jacob Bychak," and there's a signature above that signature

14    line.

15         Is that yours, sir?

16         DEFENDANT BYCHAK:  Yes, it is, Your Honor.

17         THE COURT:  And it's dated June 6th.

18         Is that when you signed it?

19         DEFENDANT BYCHAK:  Yes, it is, Your Honor.

20         THE COURT:  And prior to signing it and initialing

21    each of the pages, did you have the full opportunity to

22    discuss -- or, number one, read the plea agreement?

23         DEFENDANT BYCHAK:  Yes, I did.

24         THE COURT:  And to discuss the terms of the plea

25    agreement with your attorney?

1        DEFENDANT BYCHAK:  Yes, I did, Your Honor.

2        THE COURT:  Do you have any questions at all as to

3   any of the terms or conditions in the plea agreement?

4        DEFENDANT BYCHAK:  No, I don't, Your Honor.

5        THE COURT:  Amongst the provisions in the plea

6   agreement is a waiver of appeal, and that's found at page 11

7   through 12.  And it waives -- that is, gives up -- all rights

8   to appeal and collaterally attack every aspect of the

9   conviction and sentence.

10       And there are just a few exceptions.  One is that

11  you may appeal a sentence imposed that is above the high end

12  of the guidelines, and you may collaterally attack your

13  conviction or sentence on the basis that you received

14  ineffective assistance of counsel.

15       You understand that those are the only exceptions

16  provided as to this waiver of appeal?

17       DEFENDANT BYCHAK:  Yes, I do, Your Honor.

18       THE COURT:  Ms. Munk, did you discuss the plea

19  agreement thoroughly with your client?  And, in your opinion,

20  does he understand all of the terms and conditions of the plea

21  agreement?

22       MS. MUNK:  I did discuss it, Your Honor.  And, yes,

23  he does understand all the terms and conditions.

24       THE COURT:  Mr. Bychak, other than what the

25  Government has promised you in the plea agreement, have you

1   been promised anything else by anyone that has been a factor

2   in your decision to plead guilty?

3           DEFENDANT BYCHAK:  No, Your Honor.

4           THE COURT:  Has anyone attempted in any way to force

5   you to plead guilty?

6           DEFENDANT BYCHAK:  No, Your Honor.

7           THE COURT:  Are you pleading guilty of your own free

8   will because you are, in fact, guilty?

9           DEFENDANT BYCHAK:  Yes, Your Honor.

10          THE COURT:  Now that you have heard the rights that

11  you're waiving, the maximum penalties you face, do you still

12  wish to plead guilty to the charge here today?

13          DEFENDANT BYCHAK:  Yes, I do, Your Honor.

14          THE COURT:  How do you plead to the superseding

15  information?  Guilty or not guilty?

16          DEFENDANT BYCHAK:  Guilty.

17          THE COURT:  All right.  Listen carefully as I recite

18  into the record what has been provided as a factual basis.

19  When I finish, I will ask you if all of these facts are true

20  and correct.

21          One, at all relevant times, Defendant worked for a

22  San Diego-based Internet marketing company called

23  Frontline Direct, then Adconion Direct, and then Amobee

24  (hereinafter referred to collectively as "Company A.")

25          As part of his duties at Company A, Defendant

managed the acquisition and announcement of Internet Protocol

addresses.  The Defendant knew and intended these IPs were to

be used to send multiple commercial electronic mail messages

to persons throughout the United States.

Two, during the period of the conspiracy, the

Defendant agreed with other co-conspirators working at

Company A to purchase 11 domain names associated with IP

addresses from Daniel Dye of GetAds and announce these IP

addresses via Vincent Tarney of the Mata Group and others so

that the GetAds IPs could be used by Company A to send

multiple commercial e-mail messages throughout the

United States.

The GetAds IPs included the IP addresses associated

with the domain names ect.net (165.192.0.0/16),

Telalink.net (207-234.0.0/17 and 207.152.0.0/18),

SierraSemi.com, (151.192.0.0/16), openbusinesssystems.com

(168.129.0.0/16), Moore-Solutions.com (167.87.0.0/16),

TrinityMicro.com (63.79.40.0/21), Paxney.com

(208.199.68.0/23), Sura.net (163.253.0.0/16),

Cdnair.ca (142.147.0.0/16) Mediavis.com (149.118.0.0/16),

and Internex.net, various IP addresses.

The domain names associated with the GetAds IPs

allowed the Defendant and his co-conspirators to control the

IP addresses; although, as the Defendant was aware, neither he

nor his co-conspirators nor Dye nor GetAds were the actual

registrants or legitimate successors in interest for these IP addresses.

Three, to announce some of the GetAds IP netblocks, Dye provided Defendant and his co-conspirators with letters of authorization -- that is LOAs -- which falsely attested that the true registrant of the IP addresses had authorized use of the IP addresses.

The LOAs provided by Dye used the name and a fictitious letterhead of the IP address block's true registrant.  Dye provided the Defendant and his co-conspirators with electronic versions of LOAs created using word-processing software.  This format enabled the Defendant and his co-conspirators to edit or alter the LOAs.

The Defendant and his co-conspirators, knowing that they were not the true registrants or legitimate successors in interest or otherwise authorized by the true registrant provided these LOAs to Tarney and other hosting companies, representing that they were authorized by the registrant to enable Company A to use the GetAds IPs to send bulk unsolicited commercial e-mail to individuals throughout the United States.

Five, after the GetAds IPs were announced and under their control, Defendant and his co-conspirators coordinated Company A's use of these IP addresses to transmit multiple commercial electronic mail messages.

1          Six, the parties agree that the amount of loss

2     attributable to the offense is $313,700.

3          Mr. Bychak, are all of these facts that I recited

4     into the record true and correct?

5          DEFENDANT BYCHAK:  Yes, they are, Your Honor.

6          THE COURT:  Is the Government satisfied with the

7     factual basis?

8          MS. PIERSON:  Yes, we are.

9          Thank you.

10         THE COURT:  Do both defense counsel and government

11    counsel agree that Mr. Bychak's plea is made knowingly,

12    voluntarily, with a full understanding of the consequences of

13    the plea?

14         Ms. Munk?

15         MS. MUNK:  Yes, Your Honor.

16         THE COURT:  Government counsel?

17         MS. PIERSON:  Yes, Your Honor.

18         THE COURT:  The Court finds that Mr. Bychak is fully

19    competent and capable of entering an informed plea, that he is

20    aware of the nature of the charges and the consequences of the

21    plea, and that the plea of guilty is a knowing and voluntary

22    plea supported by an independent basis of fact containing each

23    of the essential elements of the offense.

24         The plea is accepted, and the Court finds Mr. Bychak

25    guilty as charged in the superseding information.

1          And we will set the matter for sentencing.

2          May I please have a sentencing hearing date?

3          THE CLERK:  We can do the 23rd of September.

4          THE COURT:  September 23rd.  All right.

5          Does September 23rd work for you, Ms. Munk?

6          MS. MUNK:  It does, Your Honor.

7          THE COURT:  The Government?

8          MS. PIERSON:  That's fine.

9          THE COURT:  Mr. Jones, will that also work for you?

10          MR. JONES:  Your Honor, it will not.  I will be in

11     trial that week out of state, so I might need a different

12     date.  Maybe --

13          THE COURT:  All right.  So let me ask you this:  Do

14     you need to -- or do you want to have the sentencing on the

15     same day as Mr. Bychak, or does it matter to you?

16          MR. JONES:  It doesn't matter.

17          MS. PIERSON:  It matters to the United States since

18     this is a package deal.  So we request that they all be

19     sentenced on the same date.

20          THE COURT:  Okay.  So how about -- when does your

21     trial --

22          MR. JONES:  It's the last week of September.  So I

23     could do it the first week of October.  I believe Ms. Munk has

24     something to do the second week of October.

25          MS. MUNK:  I'm available October 7th, Your Honor, if

1    we want to do that first week.

2              THE COURT:  Then, as to Mr. Qayyum, is Ms. Bernstein

3    or Mr. Bienert available on October the 7th, as well?

4              MR. LITTRELL:  It looks like Mr. Bienert is

5    available on October 7th, at least.  Hopefully Ms. Bernstein

6    as well.

7              THE COURT:  So we'll set it for October 7th at

8    10:00 a.m.

9              That's a Friday; correct?

10             THE CLERK:  Yeah.

11             THE COURT:  At 10:00 --

12             Actually, let's make it at 9:00 a.m.

13             And then counsel is directed to file papers of --

14   and I'm sorry.  I don't need to remind you all of that.  You

15   all have filed quite a few papers in this case.

16             MS. MUNK:  Is that two weeks in advance, Your Honor?

17             THE COURT:  Yes.  Just comply with the local rules.

18             As far as the sentencing summary chart, you don't

19   need to have that until it's a week before; although, as a

20   practical matter, a fair number of lawyers don't always file

21   them a week before.  But, yes, as to the sentencing summary

22   chart, you can file that a week before.

23             MS. MUNK:  And, Your Honor, we had discussed with

24   the Government Section VI (E) of the plea agreement, which is

25   page 7, talks about this disposition being a package deal, and

1   the Government agreed to just put on the record that once

2   everyone has entered the changes of pleas and the deferred

3   prosecution, that any breach by -- if there's a potential

4   breach by one Defendant later on, that the Government would

5   not be considering that a breach to all the other Defendants.

6           They agreed to put that on the record, so I just

7   wanted to address that.

8           THE COURT:  All right.

9           MS. PIERSON:  And we wanted to clarify that what we

10  meant by this was that the idea was that everybody would plead

11  guilty and that no one, at the last minute, would withdraw

12  their plea.

13          So as long as no one withdraws their plea before

14  sentencing, then there won't be a problem with any of the

15  other Defendants.

16          If, for example, one Defendant were to get a DUI,

17  for example, between now and sentencing, we wouldn't hold that

18  against all the other Defendants.  The only thing that we are

19  trying to bind everyone to is no future trials.

20          THE COURT:  All right.  So the aim is to avoid trial

21  as to any Defendant, and the way to do that is to have them

22  enter a change of plea or, in the case of Mr. Pacas, to enter

23  this deferred prosecution.

24          But if suddenly in order to arrive at this favorable

25  designation, tomorrow if you had somebody say, "Well, you know

1   what?  I want to withdraw my plea," and that that was their

2   plan all along, that in that situation, then the Government

3   would ask the Court to strike and set aside the other changes

4   of plea?

5       MS. PIERSON:  Yeah.  I mean, that's the only thing

6   that we have a big concern about here.

7       THE COURT:  All right.  So do you understand that's

8   Ms. Pierson's thought process on this, Ms. Munk?

9       MS. MUNK:  Yes.  And we're fine with that,

10  Your Honor.  We just wanted to make sure that if there was a

11  breach by one Defendant, it wouldn't be applied as a breach

12  against the other Defendants.

13      MR. JONES:  Your Honor, yes.  That's our

14  understanding, and we agree with that.

15      MR. PATRICK:  Yes.

16      And with respect to Mr. Pacas, Your Honor, that

17  statement also appears in the deferred prosecution agreement,

18  Section II, paragraph D.

19      And just for the record, I want to confirm that the

20  Government's representations also apply to that agreement, as

21  well.

22      THE COURT:  Okay.  Very good.  Then the record is

23  clear.

24      And then I believe that concludes the matter as to

25  Mr. Bychak for today.

1          Is there anything else?

2          MS. MUNK:  That's it, Your Honor.

3          Thank you.

4          And just to clarify, does Mr. Bychak need to check

5     in with Probation today?  It was our understanding he does.

6          THE CLERK:  I think it's still pretrial.  I think

7     it's still Pretrial, but I'm waiting to confirm, because

8     usually they're still on pretrial release until they're

9     sentenced, and then it goes to Probation.

10          THE COURT:  Yeah.  At this point, as far as

11     Probation, I expect that what will happen is that there will

12     be some scheduling of an interview of your client, and that

13     will be independent -- that will be done independently by the

14     Probation Office.  I don't think he has to report to Probation

15     at this moment.  He's still under the monitoring of Pretrial

16     Services.

17          Do you have a different view?

18          MS. PIERSON:  Typically following a guilty plea, the

19     courts order the defendant to appear at the Probation

20     Department to start the process within 24 hours or, you know,

21     in this case, because we've got a holiday or whatever, if he

22     can't get there today, by Monday.

23          But I think that the Court has to order the

24     preparation of a presentence report and also order the

25     Defendant to appear at a certain time before Probation to

1  start that process.

2          THE COURT:  Well, I know I always refer the matter

3  to Probation just kind of as a matter of course.

4          Frankly, I haven't had occasion to have to direct

5  somebody to report to Probation to get the process going, but

6  maybe that's because it's kind of -- everything's on

7  autopilot, and all of the attorneys already know that that is

8  what happens.

9          But at this point, to the extent that the matter is

10 being referred to the Probation Office, Mr. Bychak, you are

11 directed to report to the Probation Office to begin the

12 process of a presentence investigation.

13         Do you understand, sir?

14         DEFENDANT BYCHAK:  Yes, sir, Your Honor.

15         THE COURT:  All right.  Then let's move on to

16 Mr. Manoogian.

17         MR. JONES:  Your Honor, before we get into the

18 change of plea, typically -- and this is a little confusion

19 we're having here with respect to having to report to

20 Probation.

21         It's my understanding that, by the Court ordering

22 the matter to Probation, that Probation would get in touch

23 with Mr. Manoogian and Mr. Bychak and Mr. Qayyum?

24         THE COURT:  Well, here's what I think makes sense:

25 For each defense attorney to reach out to the Probation Office

1   and let them know what has happened today -- there's been a

2   change of plea -- and then coordinate with them as to how

3   Probation would like to proceed, if Probation would like to

4   meet with your clients at that moment or just wants to

5   schedule the matter for a presentence investigation report

6   interview in two or three or whatever -- however many days

7   from it.

8           MS. MUNK:  And, Your Honor, if the Court's

9   agreeable, I guess my understanding is Probation is in another

10  building now.  If Mr. Bychak can just give them a call, or I

11  can give them a call.

12          Is that acceptable?

13          THE COURT:  Give them a call and then ask them what

14  they would like for you to do.  If they want for you to

15  physically walk over there and meet with them in person, then

16  I'll direct you to do that.

17          If, by your call with them, they let you know that

18  they don't need to see you today, then that's fine with me.  I

19  just want to get the process going forward.

20          MS. MUNK:  Great.  Thank you, Your Honor.

21          MR. JONES:  In the meantime, he still has a Pretrial

22  Services officer.

23          THE COURT:  That's correct.

24          MR. JONES:  So we'll contact them.

25          THE COURT:  Yes.

1          MR. JONES:  Thank you.

2          THE COURT:  Is there anything else?

3          (Court conferring with the clerk.)

4          THE COURT:  So at this point, given how long things

5     have taken, which are longer than I expected -- but I guess

6     that's my fault -- I'm concerned whether or not we'll be able

7     to get both of these remaining changes of pleas in before we

8     have the jury call in.

9          So I'm wondering whether or not at this point -- and

10    given my experience right now with going through the plea with

11    Mr. Bychak, it may be that we can expeditiously, and in a

12    clear and concise fashion, be able to have both changes of

13    pleas as to Mr. Qayyum and Mr. Manoogian at this point.

14         So let's see if we can proceed in that manner as to

15    these two Defendants so that I won't have to recite the

16    constitutional rights, the maximum penalties, the elements,

17    and then I will specifically go forward with respect to the

18    factual basis and then the plea agreement.

19         So let's arraign both Mr. Manoogian and

20    Mr. Qayyum.

21         MR. LITTRELL:  Your Honor, just to point out, if the

22    Court wasn't aware, Mr. Qayyum is pleading to a different

23    count.

24         THE COURT:  Is that right?

25         MR. LITTRELL:  The elements may not be identical.

1    He's not pleading to conspiracy.  So I'm all for efficiency,

2    but I want to make sure that we don't --

3              THE COURT:  I see.  So he's not pleading to the --

4              MR. LITTRELL:  He's pleading to Count 2.

5              THE COURT:  So, then, let's just go forward as

6    originally planned.

7              Let's go forward with Mr. Manoogian.

8              Andy, let's arraign Mr. Manoogian.

9              THE CLERK:  Okay.

10             Is Mark Manoogian your true name?

11             DEFENDANT MANOOGIAN:  Yes.

12             THE CLERK:  You are informed that a superseding

13   misdemeanor information has now been filed charging you with

14   Title 18 U.S.C. § 1037(a)(5) and (b)(3), electronic mail

15   fraud, a misdemeanor.

16             Have you received a copy of the superseding

17   information?

18             DEFENDANT MANOOGIAN:  Yes.

19             THE CLERK:  You are further informed that you are

20   entitled to a trial by jury or trial by this Court for a

21   misdemeanor, to be represented by counsel at all stages of the

22   proceedings before this Court, and to have witnesses summoned

23   to testify on your own behalf.

24             How do you plead to Count 1, guilty or not guilty?

25             DEFENDANT MANOOGIAN:  Guilty.

1          THE CLERK:  Counsel, do you waive reading of the

2     count?

3          MR. JONES:  Yes, I do.

4          THE CLERK:  Please raise your right hand.

5          (Defendant Manoogian sworn under penalty of

6          perjury.)

7          THE COURT:  Mr. Manoogian, the oath that was

8     administered requires you to provide truthful answers to the

9     questions that I pose to you.  If you were to knowingly

10    provide false information, you could be prosecuted for

11    perjury.

12         Do you understand that?

13         DEFENDANT MANOOGIAN:  Yes.

14         THE COURT:  How old are you, sir?

15         DEFENDANT MANOOGIAN:  39 years old.

16         THE COURT:  And where were you born?

17         DEFENDANT MANOOGIAN:  Southborough, Massachusetts.

18         THE COURT:  And how far did you go in school?

19         DEFENDANT MANOOGIAN:  I have a J.D., Your Honor.

20         THE COURT:  Are you presently under the influence of

21    any alcohol, medication, or drugs which would affect your

22    ability to understand what's happening here today?

23         DEFENDANT MANOOGIAN:  No, Your Honor.

24         THE COURT:  Have you been treated recently for

25    mental illness or addiction to drugs of any kind?

1          DEFENDANT MANOOGIAN:  No, Your Honor.

2          THE COURT:  And you have received a copy of the

3    superseding information pending against you.

4          Is that true, sir?

5          DEFENDANT MANOOGIAN:  Yes, I have, Your Honor.

6          THE COURT:  Have you discussed those charges with

7    your attorney?

8          DEFENDANT MANOOGIAN:  Yes, Your Honor.

9          THE COURT:  Are you fully satisfied with the advice

10   and representation provided to you by your attorney?

11         DEFENDANT MANOOGIAN:  Yes, Your Honor.

12         THE COURT:  Before I can accept your plea, I must

13   assure myself that your plea is being made knowingly and

14   voluntarily with a full understanding of the consequences of

15   the plea, including the rights that you waive by entering such

16   a plea.

17         So let me begin by addressing the waiver of rights.

18         You have a right to plead not guilty to any offense

19   charged against you and to persist in that plea.

20         You have a right to a speedy and public trial by

21   jury, or you can waive that right and have the Court try the

22   case without a jury.

23         In either case, the Government would be required to

24   prove your guilt by proof beyond a reasonable doubt.

25         You have a right to have an attorney represent you

1    throughout your case, including trial, and a right to have one

2    appointed to represent you at no charge to you if you

3    financially qualify.

4             You have a right to confront and cross-examine

5    witnesses called to testify against you, a right to have

6    witnesses subpoenaed to testify on your behalf, a right to

7    present any defense that you may have to the charges, a right

8    to remain silent throughout the trial.

9             Should you decide not to testify or put on any

10   evidence, these facts could not be used against you.

11            By pleading guilty, you give up each of these

12   rights, except you retain your right to have an attorney

13   represent you all the way through sentencing.

14            Is that clear to you, sir?

15            DEFENDANT MANOOGIAN:  Yes, Your Honor.

16            THE COURT:  Let me address the maximum penalties

17   that you face by pleading guilty and being convicted of the

18   charges in the superseding information.

19            You could be sentenced to up to one year in prison,

20   be fined up to $100,000, have a 1- -- I'm sorry -- a $25

21   special assessment imposed, and be sentenced to up to one year

22   of supervised release.

23            Do you understand that those are the maximum

24   penalties that you face if convicted of the charges that you

25   are pleading guilty to?

1    DEFENDANT MANOOGIAN:  Yes, Your Honor.

2    THE COURT:  And with respect to the elements that

3    the Government would be required to prove at trial, they are

4    as follows:

5    One, beginning on or about December 2010 and ending

6    on or about September 2014, there was an agreement between two

7    or more persons to commit the offense of electronic mail fraud

8    in violation of Title 18 U.S.C. § 1037(a)(5) and (b)(3).

9    Two, the Defendant became a member of the conspiracy

10   knowing of its object and intending to help accomplish it.

11   Three, the Defendant or a co-conspirator knowingly

12   and falsely represented himself to be the registrant, or the

13   legitimate successor in interest to the registrant, of five or

14   more Internet Protocol addresses.

15   Four, the Defendant or a co-conspirator

16   intentionally initiated the transmission of multiple

17   electronic mail messages from such addresses.

18   And, five, the electronic mail messages were

19   transmitted in and affecting interstate commerce.

20   Do you understand that those are the elements of the

21   charge that you are pleading guilty to that the Government

22   would be required to prove with evidence beyond a reasonable

23   doubt?

24   DEFENDANT MANOOGIAN:  Yes, Your Honor.

25   THE COURT:  Beyond the maximum penalties that you

1    face, there are also additional possible penalties and

2    collateral consequences that you face as a result of a change

3    of plea.

4            If you were to violate any condition of supervised

5    release, your release could be revoked, and you could be sent

6    back to prison for up to the entire supervised release term.

7            Do you understand that?

8            DEFENDANT MANOOGIAN:  Yes, sir, Your Honor.

9            THE COURT:  If you are currently on probation or

10   parole, a plea of guilty could result in revocation of that

11   probation or parole in the other case, which could result in

12   time in custody in addition to that ordered in this case.

13           Do you understand?

14           DEFENDANT MANOOGIAN:  Yes, Your Honor.

15           THE COURT:  If you are not a U.S. citizen, a plea of

16   guilty may affect your residency or your status with

17   immigration authorities.

18           Is that clear?

19           DEFENDANT MANOOGIAN:  Yes, Your Honor.

20           THE COURT:  A plea of guilty may result in other

21   possibly consequences, such as affecting your right to vote,

22   right to hold public office, right to serve on a jury, right

23   to receive certain federal benefits, and the right to possess

24   a firearm.

25           Do you understand that?

1          DEFENDANT MANOOGIAN:  Yes, Your Honor.

2          THE COURT:  And, if applicable, the Court may order

3    restitution, forfeiture, and notice to victims.

4          Do you understand that that's a possibility?

5          DEFENDANT MANOOGIAN:  Yes, Your Honor.

6          THE COURT:  With respect to --

7          MR. JONES:  Your Honor --

8          THE COURT:  Yes.

9          MR. JONES:  I'm sorry.  With respect to restitution

10   in the same fashion.  We'd like that on the record,

11   Your Honor, as well.

12         THE COURT:  Yes.  And so as I understand it, the

13   Government will not seek restitution against this Defendant.

14         But is that something that the Court, on its own,

15   could impose?

16         MS. PIERSON:  I think that the Court does have the

17   ability to impose that on its own.

18         We won't be seeking restitution, and we believe that

19   any potential forfeiture was covered by the company.  So I put

20   that on record.

21         THE COURT:  So the Government is not going to seek

22   it, but you understand that I have the independent power to

23   impose restitution.

24         Do you understand that?

25         DEFENDANT MANOOGIAN:  Yes, Your Honor.

1          THE COURT:  All right.  So as to the sentencing

2     guidelines, the sentence will be determined by identifying the

3     applicable advisory sentencing guidelines, identifying

4     possible authorized departures from the guidelines, and then

5     taking into account statutory sentencing factors under 3553(a)

6     of Title 18.

7          Since the sentencing guidelines are advisory, I'm

8     not bound by the guidelines.  I can vary from the guideline

9     recommendations and sentence you up to the one-year maximum

10    that I identified earlier.

11         The Court will not be able to determine the advisory

12    guideline range until after the presentence investigation

13    report has been prepared and you, your attorney, and the

14    Government have had an opportunity to challenge the reported

15    facts and the application of the guidelines.

16         Ultimately the sentence may be different than any

17    estimate or prediction by your attorney.

18         Do you understand that, sir?

19         DEFENDANT MANOOGIAN:  Yes, Your Honor.

20         THE COURT:  Have you discussed the guidelines with

21    your attorney?

22         DEFENDANT MANOOGIAN:  Yes, I have, Your Honor.

23         THE COURT:  Do you have any questions about the

24    guidelines?

25         DEFENDANT MANOOGIAN:  No, I do not.

1          THE COURT:  Fine.

2          Then once you are sentenced, you cannot withdraw the

3     plea you are making today.

4          Do you understand that?

5          DEFENDANT MANOOGIAN:  Yes, Your Honor.

6          THE COURT:  Now turning to the plea agreement that

7     has been reached in this case, I have been provided with a

8     15-page document.

9          At the bottom right-hand corner of each of the

10    15 pages are the initials "M. M."

11         Did you mark your initials on each of the 15 pages

12    of the plea agreement?

13         DEFENDANT MANOOGIAN:  Yes, I did, Your Honor.

14         THE COURT:  And on page 15, above the signature

15    for -- the signature line for "Mark Manoogian" is a signature.

16         Is that yours, sir?

17         DEFENDANT MANOOGIAN:  Yes, it is, Your Honor.

18         THE COURT:  It's dated June 6th.

19         Is that when you signed it, sir?

20         DEFENDANT MANOOGIAN:  Yes, Your Honor.

21         THE COURT:  And prior to signing it, did you read

22    all of the contents of this plea agreement?

23         DEFENDANT MANOOGIAN:  Yes, I did, Your Honor.

24         THE COURT:  And did you fully discuss all the

25    contents with your attorney?

1      DEFENDANT MANOOGIAN:  Yes, Your Honor.

2      THE COURT:  Do you have any questions at all as to

3  any term or any provision in the plea agreement?

4      DEFENDANT MANOOGIAN:  No, Your Honor.

5      THE COURT:  Within the plea agreement, there is a

6  waiver of appeal and collateral attack, that is that you

7  waive -- that is, give up -- all rights to appeal and

8  collaterally attack every aspect of your conviction and

9  sentence.

10      The only exceptions are you may appeal the custodial

11  sentence above the high end of the sentencing guidelines

12  recommended by the Government, and you may also collaterally

13  attack the conviction or sentence on the basis that you

14  received ineffective assistance of counsel.

15      Do you understand that these are the only two

16  exceptions that would avoid the waiver of appeal and

17  collateral attack that you have agreed upon?

18      DEFENDANT MANOOGIAN:  Yes, Your Honor.

19      THE COURT:  And then, Mr. Jones, did you discuss the

20  terms of the plea agreement with your client fully, and in

21  your view, does Mr. Manoogian understand fully the plea

22  agreement and its terms?

23      MR. JONES:  I did, Your Honor, and I believe he

24  does.

25      THE COURT:  And, Mr. Manoogian, other than what the

1    Government has promised you in the plea agreement, have you

2    been promised anything else by anyone that has been a factor

3    in your decision to plead guilty?

4              DEFENDANT MANOOGIAN:  No, Your Honor.

5              THE COURT:  Has anyone attempted in any way to force

6    you to plead guilty?

7              DEFENDANT MANOOGIAN:  No, Your Honor.

8              THE COURT:  Are you pleading guilty of your own free

9    will because you are, in fact, guilty?

10             DEFENDANT MANOOGIAN:  Yes, Your Honor.

11             THE COURT:  Now that you've heard the constitutional

12   rights that you will be waiving, the maximum penalties that

13   you face, do you still wish to plead guilty to the charge

14   today?

15             DEFENDANT MANOOGIAN:  Yes, Your Honor.

16             THE COURT:  How do you plead to the charge?  Guilty

17   or not guilty?

18             DEFENDANT MANOOGIAN:  Guilty, Your Honor.

19             THE COURT:  Again, sir, in your case, I will ask you

20   to listen closely as I recite into the record the facts that

21   support a change of plea in this case.  At the end of my

22   recitation, I'll ask if all of these facts are true and

23   correct.

24             One, at all relevant times, Defendant worked for a

25   San Diego-based Internet marketing company called

1    Frontline Direct, then Adconion Direct, and then Amobee,

2    hereinafter referred to collectively as "Company A."

3            Defendant was hired by Company A to handle the

4    acquisition and announcement of Internet Protocol addresses.

5    Defendant knew and intended these IPs were to be used to send

6    multiple commercial electronic mail messages to persons

7    throughout the United States.

8            Two, during the period of the conspiracy, the

9    Defendant agreed with other co-conspirators working at

10   Company A to purchase 11 domain names associated with IP

11   addresses from Daniel Dye of GetAds and announced these IP

12   addresses via Vincent Tarney of the Mata Group and others so

13   that the GetAds IPs could be used by Company A to send

14   multiple commercial e-mail messages throughout the

15   United States.

16           The GetAds IPs included the IP addresses associated

17   with the domain names ect.net (165.192.0.0/16),

18   Telalink.net (207-234.0.0/17 and 207.152.0.0/18),

19   SierraSemi.com, (151.192.0.0/16), openbusinesssystems.com

20   (168.129.0.0/16), Moore-Solutions.com (167.87.0.0/16),

21   TrinityMicro.com (63.79.40.0/21), Paxney.com

22   (208.199.68.0/23), Sura.net (163.253.0.0/16),

23   Cdnair.ca (142.147.0.0/16) Mediavis.com (149.118.0.0/16), and

24   Internex.net, various IP addresses.

25           The domain names associated with the GetAds IPs

1    allowed the Defendant and his co-conspirators to control the

2    IP addresses; although, as the Defendant was aware, neither he

3    nor his co-conspirators nor Dye nor GetAds were the actual

4    registrants or legitimate successors in interest for these IP

5    addresses.

6            Three, to announce some of the GetAds IP netblocks,

7    Dye provided Defendant and his co-conspirators with letters of

8    authorization, which falsely attested that the true registrant

9    of the IP addresses had authorized use of the IP addresses.

10           The LOAs provided by Dye used the name and a

11   fictitious letterhead of the IP address block's true

12   registrant.

13           Dye provided the Defendant and his co-conspirators

14   with electronic versions of LOAs, created using

15   word-processing software.  This format enabled the Defendant

16   and his co-conspirators to edit or alter the LOAs.

17           Four, the Defendant and his co-conspirators, knowing

18   that they were not the true registrants, the legitimate

19   successors in interest, or otherwise authorized by the true

20   registrant, provided these LOAs to Tarney and other hosting

21   companies, representing that they were authorized by the

22   registrants, or by the registrant, to enable Company A to use

23   the GetAds IPs to send bulk unsolicited commercial e-mail to

24   individuals throughout the United States.

25           Five, after the GetAds IPs were announced and under

1     their control, Defendant and his co-conspirators coordinated

2     Company A's use of these IP addresses to transmit multiple

3     commercial electronic mail messages.

4             And, six, the parties agree that the amount of loss

5     attributable to the offense is $313,700.

6             Do Ms. --

7             Or I should ask.  Are all of these facts that I

8     recited into the record true and correct, Mr. Manoogian?

9             DEFENDANT MANOOGIAN:  Yes, Your Honor.

10            THE COURT:  Is the Government satisfied with the

11     factual bases?

12            MS. PIERSON:  Yes, we are.

13            Thank you, Your Honor.

14            THE COURT:  And do both defense counsel and

15     Government counsel believe that Mr. Manoogian's plea is made

16     knowingly, voluntarily, with a full understanding of the

17     consequences of the plea?

18            Mr. Jones?

19            MR. JONES:  Yes, Your Honor.

20            THE COURT:  Ms. Pierson?

21            MS. PIERSON:  Yes, Your Honor.

22            THE COURT:  The Court finds that Mr. Manoogian is

23     fully competent and capable of entering an informed plea, that

24     he is aware of the nature of the charges and the consequences

25     of the plea, and that the plea of guilty is a knowing and

1   voluntary plea supported by an independent basis of fact

2   containing each of the essential elements of the offense.

3           The plea is accepted.  I find Mr. Manoogian guilty

4   of the charge in the superseding information.

5           The Court will set the matter for sentencing

6   October 7th at 9:00 a.m.  The matter will be referred to the

7   Probation Office.

8           And, Mr. Jones, I will ask you to reach out to the

9   Probation Office after this hearing.

10          Anything else?

11          MR. JONES:  No, Your Honor.

12          MS. PIERSON:  Nothing further.

13          THE COURT:  Then let's move on to Qayyum.

14          THE CLERK:  Is Mohammed Abdul Qayyum your true name?

15          DEFENDANT QAYYUM:  Yes.

16          THE CLERK:  You are informed that a superseding

17  misdemeanor information has now been filed charging you with

18  Title 18 U.S.C. § 1037(a)(5) and (b)(3), electronic mail

19  fraud, and Title 18 U.S.C. § 2, aiding and abetting a

20  misdemeanor.

21          Have you received a copy of the superseding

22  information?

23          DEFENDANT QAYYUM:  Yes.

24          THE CLERK:  You are further informed that you are

25  entitled to a trial by jury or by this Court for a

1   misdemeanor, to be represented by counsel at all stages of the

2   proceedings before this Court, and to have witnesses summoned

3   to testify on your behalf.

4           How do you plead to Count 2?  Guilty or not guilty?

5           DEFENDANT QAYYUM:  Guilty.

6           THE CLERK:  Do you waive reading of the superseding

7   information?

8           DEFENDANT QAYYUM:  Yes.

9           THE CLERK:  Please raise your right hand.

10          (Defendant Qayyum sworn under penalty of perjury.)

11          THE COURT:  Mr. Qayyum, the oath that was

12  administered requires you to provide truthful answers to

13  questions that I pose to you.  If you were to provide false

14  information, you could be subject to a prosecution for

15  perjury, that is, that you could be prosecuted for perjury.

16          Do you understand?

17          DEFENDANT QAYYUM:  Yes, Your Honor.

18          THE COURT:  Let me inquire.

19          How old are you, sir?

20          DEFENDANT QAYYUM:  I am 40 years old.

21          THE COURT:  Where were you born?

22          DEFENDANT QAYYUM:  I was born in Hyderabad, India.

23          THE COURT:  Could you spell the town or the

24  location.

25          DEFENDANT QAYYUM:  H-y-d-e-r-a-b-a-d.

1          THE COURT:  How far did you go in school?

2          DEFENDANT QAYYUM:  I have a master's degree in

3     computer science.

4          THE COURT:  Are you presently under the influence of

5     alcohol, medication, or drugs which would impair your ability

6     to understand what is happening today?

7          DEFENDANT QAYYUM:  No, Your Honor.

8          THE COURT:  Have you been treated recently for any

9     mental illness or addiction to drugs of any kind?

10          DEFENDANT QAYYUM:  No, Your Honor.

11          THE COURT:  And you have received a copy of the

12     pending superseding information in this case.

13          Is that correct, sir?

14          DEFENDANT QAYYUM:  Yes.

15          THE COURT:  Have you discussed the charges contained

16     within the information with your attorney?

17          DEFENDANT QAYYUM:  Yes.

18          THE COURT:  Are you fully satisfied with the advice

19     and representation that has been provided to you by your

20     attorneys?

21          DEFENDANT QAYYUM:  Yes.

22          THE COURT:  Before I can accept your plea in this

23     matter, sir, I must convince myself -- I must assure myself

24     that you are entering this appeal knowingly and voluntarily,

25     with a full understanding of the consequences of the plea,

1    that you are understanding the constitutional rights that you

2    are waiving.

3          You have a right to plead not guilty to any offense

4    charged against you and to persist in that plea.

5          You have the right to a speedy and public trial by

6    jury, or you can waive a jury trial and have the Court try the

7    case without the jury.

8          In either case, the Government would be required to

9    prove your guilt with proof beyond a reasonable doubt.

10         You have the right to have an attorney represent you

11   throughout your case, including trial, and you have a right to

12   have one appointed for you to represent you at no charge to

13   you if you financially qualify.

14         You have a right to confront and cross-examine

15   witnesses called to testify against you, a right to have

16   witnesses subpoenaed to testify on your behalf, a right to

17   present any defense that you may have to the charges, a right

18   to remain silent throughout the trial.

19         Should you decide not to testify or put on any

20   evidence, these facts could not be used against you.

21         By pleading guilty, you give up each of these

22   rights, except that you maintain your right to have an

23   attorney represent you all the way through sentencing.

24         Is that clear to you, sir?

25         DEFENDANT QAYYUM:  Yes.

1          THE COURT:  And in this case, let me identify the

2   maximum penalties that you face should you be convicted of the

3   charges.

4          The crime carries the following maximum penalties:

5   up to one year in prison, up to a $100,000 fine, a mandatory

6   special assessment of $25 per count, and a term of supervised

7   release of one year.

8          Do you understand that these are the maximum

9   penalties that you face?

10          DEFENDANT QAYYUM:  Yes.

11          THE COURT:  And with respect to the elements of the

12   offense that you are charged with that the Government would

13   have to prove with evidence beyond a reasonable doubt, they

14   are as follows:

15          One, the Defendant knowingly and falsely represented

16   himself to be the registrant, or the legitimate successor in

17   interest to the registrant, of five or more Internet Protocol

18   addresses.

19          Two, the Defendant intentionally initiated the

20   transmission of multiple electronic mail messages from such

21   addresses.

22          And, three, the electronic mail messages were

23   transmitted in and affecting interstate commerce.

24          As to the elements of aiding and abetting pursuant

25   to 18 U.S.C. § 2, the elements are as follows:

One, someone committed the offense of electronic
mail fraud in violation of Title 18 U.S.C. § 1037(a)(5).

Two, the Defendant aided, counseled, commanded,
induced, or procured that person with respect to at least one
element of electronic mail fraud.

Three, the Defendant acted with the intent to
facilitate the electronic mail fraud.

And, four, the Defendant acted before the crime was
completed.

Do you understand that these are the elements that
the Government would be required to prove if this matter were
to proceed to trial?

DEFENDANT QAYYUM:  Yes.

THE COURT:  In addition to the maximum penalties
that you face, there are other possible penalties or
consequences.

If you were to violate any condition of supervised
release, your release could be revoked, and you could be sent
back to prison for up to the entire supervised release term.

Do you understand that?

DEFENDANT QAYYUM:  Yes.

THE COURT:  If you are currently on probation or
parole, a plea of guilty could result in the revocation of
that probation or parole in the other case, which could result
in time in custody in addition to that ordered in this case.

1      Do you understand?

2      DEFENDANT QAYYUM:  Yes.

3      THE COURT:  If you are not a United States citizen,

4  a plea of guilty may affect your residency or your status with

5  immigration authorities.

6      And let me inquire.

7      Does the Government have any view on whether or not

8  a plea of guilty in this case will, or possibly, have an

9  effect on Mr. Qayyum's status?

10      MS. PIERSON:  This is --

11      Not an effect that requires automatic deportation.

12  It is discretionary, and there is a paragraph reflecting that

13  on page 6 of the plea agreement.

14      THE COURT:  All right.  And so you understand, sir,

15  that, while it's not a certainty, that there is a possibility

16  that a conviction in this case may have adverse immigration

17  consequences.

18      Do you understand, sir?

19      DEFENDANT QAYYUM:  Yes.

20      THE COURT:  A plea of guilty may also result in

21  other possible consequences, such as affecting your right to

22  vote, the right to hold public office, right to serve on a

23  jury, the right to receive certain federal benefits, and the

24  right to possess any kind of firearm.

25      Do you understand this?

1          DEFENDANT QAYYUM:  Yes.

2          THE COURT:  And if applicable, the Court may order

3     restitution, forfeiture, notice to victims in this case.

4          Do you understand that the Court retains that power;

5     although, at the same time, in this case, the Government is

6     not going to seek any of these?

7          Do you understand that?

8          DEFENDANT QAYYUM:  Yes.

9          THE COURT:  As to how the Court will determine your

10    sentence, the Court will identify the advisory sentencing

11    guidelines and any possible authorized departures under the

12    guidelines, and then the Court will consider statutory

13    sentencing factors under 3553(a) of Title 18.

14          Since these advisory guidelines are that, advisory,

15    I'm not bound by the guidelines.  I can vary from the

16    guideline recommendation and sentence you all the way up to

17    the one-year maximum.

18          Do you understand that, sir?

19          DEFENDANT QAYYUM:  Yes.

20          THE COURT:  The Court won't be able to determine the

21    advisory guideline range until after a presentence

22    investigation report has been prepared and you, your attorney,

23    and the Government have had an opportunity to challenge the

24    reported facts and application of the guidelines.  As a

25    result, the sentence may be different than any estimate that

1   your attorney may have given you.

2          Do you understand that?

3          DEFENDANT QAYYUM:  Yes.

4          THE COURT:  After -- well, actually, let me move on.

5          Finally, once you are sentenced, you cannot withdraw

6   the plea that you are making today.

7          Is that understood?

8          DEFENDANT QAYYUM:  Yes.

9          THE COURT:  I have been provided with a document

10  entitled "Plea Agreement."  It is 15 pages in length.  There

11  are notations made next to those portions where your name is

12  listed.

13         It was evidently erroneously initially listed as

14  "Abdul Mohammed Qayyum," but your name is Mohammed Abdul

15  Qayyum.

16         Is that correct, sir?

17         DEFENDANT QAYYUM:  Yes.

18         THE COURT:  So then we have notations at page 1,

19  lines 19 and 26, and again at page 15, line 23.

20         You made those corrections; is that correct, sir?

21         DEFENDANT QAYYUM:  Yes.

22         THE COURT:  Or you agreed to those corrections?

23         DEFENDANT QAYYUM:  Yes.

24         THE COURT:  And then you also would have initialed

25  each of the 15 pages at the bottom right-hand corner; is that

1    correct?

2              DEFENDANT QAYYUM:  Yes.

3              THE COURT:  And you signed above the signature line

4    at page 15 at line 22.

5              Is that true?

6              DEFENDANT QAYYUM:  Yes.

7              THE COURT:  Before you initialed each page and you

8    signed it at page 15, did you read all of the contents of the

9    plea agreement?

10             DEFENDANT QAYYUM:  Yes.

11             THE COURT:  Did you go over the terms of the plea

12   agreement with your attorney?

13             DEFENDANT QAYYUM:  Yes.

14             THE COURT:  Do you believe you understand the plea

15   agreement?

16             DEFENDANT QAYYUM:  Yes.

17             THE COURT:  Do you have any questions at all about

18   the contents of the plea agreement?

19             DEFENDANT QAYYUM:  No.

20             THE COURT:  Among other conditions and terms, there

21   is a waiver of appeal and collateral attack whereby you

22   waive -- that is, give up -- all rights to appeal and to

23   collaterally attack every aspect of your conviction and

24   sentence.

25             The only two exceptions are you may appeal a

1    custodial sentence above the high end of the guideline range

2    recommended by the Government at sentencing, and you may also

3    collaterally attack the conviction or sentence on the basis

4    that you received ineffective assistance of counsel.

5           Do you understand that those are the only two

6    exceptions from your waiver of appeal and collateral attack?

7           DEFENDANT QAYYUM:  Yes.

8           THE COURT:  And, Mr. Littrell, based upon your

9    review --

10          Did you review the plea agreement with your client,

11   or did someone else review it?

12          MR. LITTRELL:  I did, Your Honor, but Ms. Bernstein

13   and Mr. Bienert also reviewed it with him.

14          THE COURT:  And based upon your review of plea

15   agreement with Mr. Qayyum, do you believe that he understands

16   the terms of the plea agreement?

17          MR. LITTRELL:  I do, Your Honor.

18          THE COURT:  And, Mr. Qayyum, other than what the

19   Government promised you in the plea agreement, have you been

20   promised anything else by anyone that has been a factor in

21   your decision to plead guilty?

22          DEFENDANT QAYYUM:  No.

23          THE COURT:  Has anyone attempted in any way to force

24   you to plead guilty?

25          DEFENDANT QAYYUM:  No.

1          THE COURT:  Are you pleading guilty of your own free
2     will and because you are, in fact, guilty?
3          DEFENDANT QAYYUM:  Yes.
4          THE COURT:  Now that you have heard the
5     constitutional rights that you are waiving and the maximum
6     penalties that you face, do you still wish to proceed and
7     plead guilty to the charges here today?
8          DEFENDANT QAYYUM:  Yes.
9          THE COURT:  How do you plead to the charges?  Guilty
10    or not guilty?
11         DEFENDANT QAYYUM:  Guilty.
12         THE COURT:  And in your case, I will also read into
13    the record those facts that support your plea of guilty.  I
14    will ask you to listen carefully.  After I recite these facts
15    into the record, I will ask if they are true and correct.
16         One, at all relevant times, Defendant worked for a
17    San Diego-based Internet marketing company called
18    Frontline Direct, then Adconion Direct, and then Amobee,
19    hereinafter referred to collectively as "Company A."
20         Defendant was hired by Company A, in part, to handle
21    the connectivity of the Internet Protocol addresses it used.
22         Two, during the period from December 2010 through
23    September 2014, Company A purchased 11 domain names associated
24    with IP addresses from Daniel Dye of GetAds and announced
25    these IP addresses via Vincent Tarney of the Mata Group and

others so that the GetAds IPs could be used by Company A to send multiple commercial e-mail messages throughout the United States.

The GetAds IPs included the IP addresses associated with the domain names ect.net (165.192.0.0/16), Telalink.net (207-234.0.0/17 and 207.152.0.0/18), SierraSemi.com, (151.192.0.0/16), openbusinesssystems.com (168.129.0.0/16), Moore-Solutions.com (167.87.0.0/16), TrinityMicro.com (63.79.40.0/21), Paxney.com (208.199.68.0/23), Sura.net (163.253.0.0/16), Cdnair.ca (142.147.0.0/16) Mediavis.com (149.118.0.0/16), and Internex.net, various IP addresses.

The domain names associated with the GetAds IPs allowed Company A to control the IP addresses; although, as the Defendant was aware, neither he, Company A, or GetAds were the actual registrants or legitimate successors in interest for these IP addresses.

The Defendant configured e-mail accounts associated with the GetAds domain names and the names of the points of contact for the true registrants, which were then used and controlled by employees of Company A.

Three, to announce some of the GetAds IP netblocks, Dye provided letters of authorizations, which falsely attested that the true registrant of the IP addresses had authorized use of the IP addresses.

1    The LOAs provided by Dye used the name of the point

2    of contact as well as a fictitious letterhead of the IP

3    address block's true registrant.  Dye provided electronic

4    versions of LOAs created using word-processing software, which

5    enabled the recipient to edit or alter the LOAs.

6    Four, these LOAs were provided by Company A

7    employees to Tarney and other hosting companies to enable

8    Company A to use the GetAds IPs to send bulk unsolicited

9    commercial e-mail to individuals throughout the United States.

10    Five, as part of his employment at Company A, the

11    Defendant coordinated Company A's connectivity and use of

12    these IP addresses, intending that the IP addresses transmit

13    multiple commercial electronic e-mail messages throughout the

14    United States, knowing that Company A was not the true

15    registrant or legitimate successor in interest.

16    Six, the Defendant agrees that the amount of loss

17    attributable to his conduct is $9,700.

18    Sir, are all of these facts true and correct?

19    DEFENDANT QAYYUM:  Yes.

20    THE COURT:  Is the Government satisfied with the

21    factual bases?

22    MS. PIERSON:  Yes, we are, Your Honor.

23    THE COURT:  And do counsel believe that Mr. Qayyum's

24    plea is made knowingly, voluntarily, with a full understanding

25    of the consequences of the plea?

1          MR. LITTRELL:  Yes, Your Honor.

2          THE COURT:  And, Ms. Pierson?

3          MS. PIERSON:  Yes, Your Honor.

4          THE COURT:  The Court finds that Mr. Qayyum is fully

5     competent and capable of entering an informed plea; that he is

6     aware of the nature of the charges, the consequence of the

7     plea; and the plea of guilty is a knowing and voluntary plea

8     supported by an independent basis of fact containing each of

9     the essential elements of the offense.

10         The plea is accepted, and the Court finds Mr. Qayyum

11    guilty as charged.

12         The Court will set sentencing on October 7th at

13    9:00 a.m. and will direct counsel to reach out to the

14    Probation Office so that the presentence investigation process

15    can be initiated.

16         And then is there anything else?

17         MR. LITTRELL:  Yes, Your Honor.  I'm sorry to say

18    this, but we are not available on October 17th.

19         THE COURT:  No.  It's October 7th.

20         MR. LITTRELL:  I'm sorry.  October 7th.

21         Ms. Bernstein is going to be on the East Coast, and

22    she's handling sentencing.  So if the Court can indulge a day,

23    perhaps, the next week -- I understand from Mr. Jones he's not

24    available on the 14th, but I figure now is as good a time as

25    any to pick a new date because we are not going to be

1    available on October 7th.  Again, apologies.

2              THE COURT:  I wish you had brought this up when we

3    were talking about dates.  That's why I brought it up amongst

4    all the lawyers.

5              So what about October 21st?

6              MS. PIERSON:  The United States can be present on

7    any date that the Court likes.

8              THE COURT:  I'm not sure I'm available October 21st.

9              MS. MUNK:  October 21st works for --

10             THE COURT:  Yeah.  How about the 14th?

11             MR. JONES:  Your Honor, the 14th will not work.

12   I'll be out of state.

13             THE COURT:  I think, originally, we were looking at

14   September the 23rd.  What if we did it the week before?

15             Are the parties even available on the 16th of

16   September?

17             MR. LITTRELL:  I believe that we could be,

18   Your Honor.  I'm checking.

19             MS. MUNK:  We're available, Your Honor.

20             MR. JONES:  You know, I hate to be the stick in the

21   mud but --

22             THE COURT:  You are, Mr. Jones.  But you'll be

23   preparing for trial or --

24             MR. JONES:  Actually, the 16th, I'm going to be out

25   of state on another matter.

1          THE COURT:  How about September 19th?

2          MR. JONES:  September 19th?

3          I can do October 3rd.

4          THE COURT:  Is everyone available October 3rd?

5          MR. LITTRELL:  I just sent a message to

6    Ms. Bernstein.  Hopefully I get a response right away, but --

7          THE COURT:  All right.  Let's write down

8    October 3rd.  We have the jury meeting.  And that will be at

9    10:30.

10          All right.  And so, then, as far as the jury, do

11    we --

12          THE CLERK:  Yeah.  I'll have to check them in.  I'm

13    in the process of checking them in.

14          MR. LITTRELL:  Thank you, Your Honor.

15          THE COURT:  At this time, the Court is prepared,

16    then, to declare a mistrial for the reasons stated earlier,

17    and there have been no objections entered or made by any of

18    the parties.

19          So at this time, I will declare a mistrial in the

20    case.

21          MR. LINCENBERG:  Your Honor, I just want to take the

22    opportunity to thank you and your staff.  You have been a

23    pleasure to be in front of.  There's a lot of admiration for

24    how much you dig into issues, try to be fair to the parties,

25    try to come to the right conclusion, try to keep the jury

1    because of the various issues.

2         We have a lot of great respect for the prosecution

3    in this case, as well, and there's been a lot of hard fighting

4    but a lot of professionalism.

5         And I know the Court doesn't always get the proper

6    praise because of intervening protocol, but I think I speak on

7    behalf of the defense counsel.  You really deserve a lot of

8    praise.  So thank you for the way you've handled this case.

9         THE COURT:  Well, thank you.  You don't have to

10   offer those kind words.  Obviously it's an honor to serve in

11   this position, and certainly this has been an extremely

12   challenging case, but it's been interesting.

13        And, frankly, it's the challenging cases that, when

14   I look back at my career, are the ones that I guess I get the

15   most fulfillment from.  Certainly this was a hard-fought

16   contest at every possible stage.

17        There's certain things that I'm relieved about in

18   terms of not having to be in a six-week trial, but there's

19   other things that I will miss frankly, and one of the things

20   would have been the cross-examination of Mr. Dye.

21        And another thing would have been just to kind of

22   see how all of this played out if a defendant was convicted

23   before the Ninth Circuit, because there were a lot of

24   challenging issues, and a number of them were made as a first

25   impression.

1          I tried to get it right.  I'm sure I didn't always

2     get it right, but I was also kind of trying to -- well, I was

3     looking forward to having the Ninth Circuit take a look and

4     see how much of this I messed up or got right.

5          So I can't say it's always been a pleasure, but it's

6     certainly been fulfilling.  And certainly the lawyering in

7     this case is top flight.  It's the very best that the

8     profession has to offer from the defense and from the

9     Government.

10          So thank you all for your efforts, as well.

11          Are we ready?

12          (Telephonic conference with jurors.)

13          THE CLERK:  Good morning.  This is Judge Curiel's

14     courtroom.  I'm going to check in the jurors that are on the

15     phone line.  I'll call your names one at a time.  If you are

16     here, please let me know.

17          (Juror roll call.)

18          THE CLERK:  Thank you.

19          If any of you speak on the record, can you please

20     state your name first before answering or addressing the

21     Court.

22          Thank you.

23          THE COURT:  All right.  Good morning, ladies and

24     gentlemen of the jury.

25          We are in the courtroom.  We have counsel present.

1    We have each of the accused present.

2              At this time, I want to thank you for your patience.

3    This has been not only unique and unprecedented in terms of

4    what we are and have experienced over the course of the last

5    three weeks or two weeks.

6              We ended up beginning this process on May 23rd.  We

7    had the openings on May 24th; then, thereafter, the Omicron

8    variant arrived in full force, and we had a number of

9    attorneys, we had witnesses who contracted COVID.

10             Given the fact that it was not safe to proceed with

11   attorneys being infected in the courtroom and the rights of

12   the parties to have their attorneys present in court, we

13   continued the matter and suspended proceedings so that we can

14   await such period when we could safely move forward and

15   proceed.

16             In the meantime, we had started to receive

17   communications from you all letting us know that you had

18   vacations scheduled and some of you had new work positions

19   that had --

20             THE CLERK:  If you're on the phone line, can you

21   please mute your microphone.

22             THE COURT:  So we ended up coming across any number

23   of challenges, additional challenges as you may have heard.

24   We have a shortage of pilots.  We have a shortage of airline

25   pilots, and as a result, it's very difficult to reserve air

transportation these days, and given the day-to-day changes
and scheduling issues that we were experiencing, that became a
big problem.

And so, at this point now, we have reached the point
that the Court has declared a mistrial, and we will be
concluding this trial proceeding.  The matter will proceed
separately, on a separate track, with respect to these
defendants.

I wanted you to know, number one, what's happened,
because you have been patient; and, two, I'm sure you have any
number of questions.  And so I wanted to explain to you what
had happened and why we had suspended proceedings and had not
resumed.  So that is taken care of.

But beyond that, I want to again, on behalf of the
parties and the grateful Court, thank you for your willingness
to serve in a long six-week trial.  Jury service, under the
best of circumstances, in a short trial, is a sacrifice.  At
the same time, it's something that enables us to have a system
of justice that is the envy of the world, and we have visitors
from all over the world arrive in the United States to observe
our judicial proceedings and observe our jury trials.

Keep in mind that our juries hold so much power in
applying the law, in enforcing the laws of our government.  So
what you do is so critically important, and it always amazes
me that we have this process set up and we have jurors

1    faithfully arriving in court and doing their service and

2    oftentimes making friends amongst their fellow jurors.

3           But most importantly, hopefully at the end of the

4    process, walking away having, if not a newfound faith, a

5    rediscovered faith in their Government, which -- in these

6    days, we live in a divided country.  Things are very

7    polarized, but it's nice to know that when it comes to our

8    system of justice, that we have people like you who are

9    prepared to serve as judges of the facts, prepared to serve as

10   jurors.

11          So I want to again thank you from the bottom of my

12   heart for being willing to serve as jurors, for being patient

13   under these challenging -- under these daunting challenges

14   that we've faced; then -- lastly, then release you from the

15   admonition that was previously imposed that you are not to

16   discuss this matter amongst yourselves or with anyone else.

17   You, at this time, are free to discuss the matter.  You are

18   free to perform any form of research that you may want to

19   learn more about the charges.

20          So at this point, unless there's anything else from

21   you all, I'm prepared to conclude these proceedings.

22          Is there anything that any juror would like to ask

23   at this time?

24          JUROR E. MARTINEZ:  Your Honor --

25          THE COURT:  Yes, sir.  Your name?

1          JUROR E. MARTINEZ.  This is Ernesto Martinez.

2          I don't know if I understand why you're declaring a

3    mistrial.  I was wondering if you could educate us a little

4    bit more or refer us to something for us to understand a

5    little bit more.

6          Was it just the COVID and the fact that many of us

7    couldn't serve?

8          THE COURT:  Well, at this point, it is a combination

9    of all of that.  Ultimately this case was scheduled to end at

10   the end of June, and given the fact that we lost out on nine

11   trial days, we were not going to be in the position to

12   conclude this case until probably mid to late July.

13         That would have just been the evidence, and then

14   jury deliberations would have begun, and that's if we were

15   able to resume next Tuesday without any further challenges.

16   And as we've seen, we've had quite a few.

17         And so given the schedules for vacations that a

18   number of jurors informed us about -- we have one juror, I

19   believe, that starts a vacation on July 5th through the 16th.

20   We have another juror who also had a vacation around

21   July 13th.  We, in fact, lost one of the jurors because of

22   certain issues that were brought to our attention.

23         And so it was becoming clear that it was going to be

24   very difficult to be able to have 12 jurors by the middle of

25   July.  And so, with all of those moving parts, ultimately the

1    parties have resolved the case.

2              And so at this point, then, we are in the position

3    to free you of your jury service and thank you for your jury

4    service.

5              Does that answer your question, sir?

6              JUROR E. MARTINEZ:  It does, Your Honor.

7              THE COURT:  All right.  So --

8              JUROR GUMMER:  Your Honor, this is Ollie Gummer.

9    This is Ollie Gummer.

10             THE COURT:  Yes.

11             JUROR GUMMER:  I was wondering, if you have a trial

12   for anything else, I would be willing to serve again.

13             THE COURT:  Well, thank you so much, Ms. Gummer.  It

14   just warms my heart, and people here are applauding your civil

15   service and your willingness to serve.

16             I always thank our jurors who have served in the

17   military.  I thank them for their service.  And I've started

18   in the last year thanking our teachers because of what they do

19   to educate our children under really challenging

20   circumstances.  And we saw recently, with what happened in

21   Texas, that not only do our teachers give themselves to our

22   children, but in that tragic situation, they gave their life

23   protecting their students.

24             But jury service is something that, the longer I do

25   this, I am just so amazed at how we have such selfless jurors

```
1    who are prepared to serve our judicial system.  And,

2    Ms. Gummer, you represent the best of the best.

3              Thank you for that offer.  I expect that you will

4    receive a call by someone, either the state courts or our

5    courts.  I'm not sure if I can ask to have your name put back

6    into the mix.  If that's possible, I will do that.

7              But, Ms. Gummer, thank you so much.  I really

8    appreciate that.

9              JUROR GUMMER:  You're welcome.

10             THE COURT:  Anything else?

11             JUROR MORRELL:  This is Marie Morrell.

12             THE COURT:  Yes, Ms. Morrell.

13             JUROR MORRELL:  Can I get my name thrown in if that

14   is possible, as well?

15             THE COURT:  Say that one more time.

16             JUROR MORRELL:  You just mentioned to Ms. Gummer

17   that you would make a recommendation to be -- or to put our

18   names --

19             Could I add my name, as well?

20             THE COURT:  Yes.  If I can do that, we'll add your

21   name.  And you're so gracious.  And, again, you all amaze me.

22             Thank you.

23             JUROR MORRELL:  Thank you, Your Honor.

24             THE COURT:  I have a note here.

25             No, I guess I don't have to --
```

1        JUROR RAFELSKI:  I have a question.

2        THE COURT:  Who is this?

3        JUROR RAFELSKI:  This Marc Rafelski.

4        I just want to make sure I understood that we are

5   released from this matter, because there are people at my work

6   and in my life are curious.  We are free to discuss the

7   matter?  We can freely talk about our experience and not be --

8        THE COURT:  That's absolutely right.  I've released

9   you from that admonishment, and so you can talk to anybody,

10  you can research any of the issues that you had even heard

11  about during the opening statements and -- yes.  Absolutely

12  yes.

13        Anything else?

14        All right.  If there's --

15        JUROR ROCHA:  This is Allison Rocha.

16        THE COURT:  Yes, Ms. Rocha.

17        JUROR ROCHA:  I was talking with Andrew, and he said

18  you would be able to provide me with a letter to my employer

19  as I'm a nurse.  I was not able to go to work today.  To take

20  this phone call, I had to call off of work.  So I just need

21  proof that I was on this call.

22        THE COURT:  Yes.  I will be happy to write your

23  employer.  And I would just ask you to make sure that he has

24  the contact information or the person that I will write and

25  thank.

1          Also, you know, it's one thing to thank you all,

2     which you are really the most important people, but your

3     employers also deserve some praise for being willing to have

4     you out for six weeks.  I know it creates a hardship for your

5     employers, as well.

6          But in your case, Ms. Rocha, as long as I have the

7     contact information, I will be happy to write a letter to your

8     employer, letting them know that you were selected as one of

9     our jurors; that you were sent to be a juror in a six-week

10    trial and that, however, given the recent surge in COVID cases

11    and other considerations, the case has been concluded, and

12    your jury service concluded as of this morning when you all

13    were summoned to attend this telephonic proceeding.

14         All right, Ms. Rocha?

15         JUROR ROCHA:  Yeah.  That's great.  You can just

16    e-mail it if that works.

17         THE COURT:  All right.  Well, just again provide

18    that information to my clerk, and I will be delighted to do

19    that.

20         Anything else?

21         JUROR ROCHA:  Will do.  Thank you.

22         THE COURT:  Last call.  Anything else?

23         No?

24         All right.  So that concludes these proceedings.

25         Have a wonderful weekend and stay safe.

1              (Teleconference concluded.)

2              MS. PIERSON:  Your Honor, with respect to

3     Mr. Pacas, can we set a date a year from now for the

4     dismissal --

5              THE COURT:  Yes.

6              MS. PIERSON:  -- with the idea that, if the

7     Government files a motion, that no one needs to appear?

8              THE COURT:  Yes, we can.

9              Can we have a date in about a year?

10             THE CLERK:  Do you want to do Monday, June 12th?

11    The 10th is a weekend.

12             THE COURT:  That's fine.

13             All right.  June 12th at 10:30?  Is that a Monday?

14             THE CLERK:  It's a Monday.

15             THE COURT:  All right.  So, Mr. Pacas, as of this

16    moment, you are directed to return to this courtroom on

17    June 12th at 10:30 a.m.

18             Do you understand, sir?

19             DEFENDANT PACAS:  Yes, Your Honor.

20             THE COURT:  And, in the meantime, if by June 10th

21    you've abided by all the conditions of the agreement, then I

22    expect that the Government will be moving to dismiss the

23    charges, and so you won't be required to attend in that case.

24             All right, sir?

25             DEFENDANT PACAS:  Yes, Your Honor.

1           THE COURT:  Anything else?

2           MS. MUNK:  We echo the comment of Mr. Lincenberg,

3    Your Honor.

4           THE COURT:  Thank you.

5           Take care of yourselves.  Stay safe.

6           MS. MUNK:  Thank you, Your Honor.

7           (Proceedings concluded at 11:24 a.m.)

8                    -  -  -  -  -  -

9

10          CERTIFICATE OF OFFICIAL COURT STENOGRAPHER

11          I, Tricia Rosate, federal official court

12   reporter, in and for the United States District Court for the

13   Southern District of California, do hereby certify that

14   pursuant to Section 753, Title 28, United States Code, that to

15   the best of my ability, the foregoing is a true and correct

16   transcript of the stenographically reported proceedings held

17   in the above-entitled matter and that the transcript page

18   format is in conformance with the regulations of the

19   Judicial Conference of the United States.

20          Dated this 25th day of July 2022

21          s/  Tricia Rosate
            _____
            Tricia Rosate, CSR No. 10891, RDR, CRR, FCRR
22          Federal Official Court Stenographer

23

24

25